# Moulton v. The State.

*Indictment for Grand Larceny.*

1. *Proof of character.*—Character, whether good or bad, can only be proved by general reputation, and evidence of particular acts or conduct is inadmissible, both on direct examination and on cross-examination; though, in the latter, a greater latitude is allowed than in the

VOL. LXXXVIII.

[Moulton v. The State.]

former, and a witness may sometimes be asked irrelevant questions which tend to test his accuracy, veracity, or credibility.

2. *Same; case at bar.*—A witness for the defense, having testified that he knew the general character of the defendant in the neighborhood, and that it was "very good," was asked on cross-examination, "whether he did not know that the defendant used to run away from home for weeks and months at a time, and his father had to send and bring him back;" and answered: "Yes; he used to go off for a week or so at a time, but I used to tell his father where he was; and this is all I ever heard against him." *Held*, on objection to the question and answer each, that the evidence was improperly admitted.

FROM the City Court of Mobile.
Tried before the Hon. O. J. SEMMES.

JNO. E. MITCHELL, for appellant.—The testimony of Chandler, to which objection was made, related to particular acts or conduct, and was improperly admitted.—Wharton's Cr. Ev., § 61, and cases cited; 3 Amer. & Eng. Encyc. Law, 115; *Reddick v. State*, Florida, 5 So. Rep. 705; *Ingram v. State*, 67 Ala. 72; *DeArman v. State*, 71 Ala. 361; *Teese v. Huntington*, 23 How. U. S. 2.

WM. L. MARTIN, Attorney-General, and LESLIE B. SHELDON, *contra.*—A person's character may be proved by his reputation—that is, by what is said of him in the community in which he lives. But this is not the only source of information. A witness may derive his knowledge "from many things, some of which it would be difficult, if not impossible to define." He may know the character of the person inquired about, although he has never heard it canvassed, and does not even know a majority of his neighbors. The manner in which a person is received and treated in society, which is matter of observation only, is one of the tests of character, as well as what is said of him. When a witness has testified as to character, "it is always permissible, on cross-examination, to ascertain the extent of his information, and the data from which he draws his conclusions;" in other words, to inquire as to the particular facts affecting character. *Ingram v. State*, 67 Ala. 72; *DeArman v. State*, 71 Ala. 361; *Jackson v. State*, 78 Ala. 472; *Hadjo v. Gooden*, 13 Ala. 718; *Martin v. Martin*, 25 Ala. 201; *Dave v. State*, 22 Ala. 23; *Ward v. State*, 28 Ala. 53; *Sullivan v. State*, 66 Ala. 48; *Haley v. State*, 63 Ala. 83.

McCLELLAN, J.—Appellant, defendant below, was convicted on an indictment charging him with larceny from a

[Moulton v. The State.]

tug-boat, under section 3789 of the Code. On the trial, defendant introduced one Chandler, who testified that he knew the general character of the accused, in the neighborhood in which he lived, and that it was "very good." This witness, on cross-examination, was asked by the solicitor whether he "didn't know that the defendant used to run away from home for weeks and months at a time, and his father had to send and bring him back;" and replied: "Yes; he used to go off for a week or so at a time, but I used to tell his father where he was; and this is all I ever heard against him." The defendant objected to the interrogatory, and moved to exclude the answer; but both his objection and motion were overruled, and the evidence allowed to go to the jury. This action of the court was duly excepted to, and is now presented for our consideration.

The doctrine is too familiar to require support from a citation of texts or adjudged cases, that character, good or bad, can only be established by evidence of general reputation. The issue involved, when it is sought to influence the verdict of jurors by inviting their consideration of the good character of the defendant, embraces no element of conduct, but is met and filled solely by the repute in which the person inquired about is held in the community in which he lives. Conduct doubtless is, in all cases, to a greater or less degree, the basis of reputation—the efficient cause of whatever impression has been made on the community, touching the qualities of the man; but it is this resultant of conduct, and not conduct itself—whether regard be had to a general course of life, or to particular acts—which may go to the jury in a given case, to aid them in arriving at a just conclusion as to the fact, and in some instances the degree, of guilt. The law draws no inferences, nor permits the jury to indulge in speculations, as to guilt or innocence in respect to the act charged, from the fact that the accused has or has not been guilty of other acts—except in certain cases wholly foreign to the question of character—or that his walk in life has been exemplary or the reverse. And a witness to character can not speak of particular acts, or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives. The rule applies with equal force to *original* and *rebutting* testimony. The issue is good or bad repute, and to this each party is confined. Similarly, the *cross-examination* of a character witness must be conducted within the

limits of this inquiry. The cardinal rule, applicable to cross-examination, is, that while it may take a wider range in the case than was covered by the examination in chief, and even elicit facts not before in evidence, it must still "relate to facts in issue, or relevant, or deemed to be relevant thereto."—*Stoudenmire v. Williamson*, 29 Ala. 558; 2 Brick. Dig. 549, § 125. It is manifest that, where good or bad repute is the issue, and this issue is incapable of being solved either way by evidence of conduct or particular acts, such evidence is wholly beyond the inquiry, and irrelevant. The only exception to the general rule last stated, which bears any relation to the matter we are considering, is, that irrelevant questions which tend to test the accuracy, veracity, or credibility of the witness, may sometimes be asked on cross-examination.

It is inconceivable that the accuracy or credibility of a witness, who has testified to a fact which does not in any degree rest in evidence of conduct, can be impeached by any sort or amount of proof as to conduct. There is a class of questions which are admissible only on cross-examination, and are competent solely under this exception; but they raise no inquiry as to the conduct of the person whose character is in issue. Since it is the opinions of a man's neighbors which constitute the character which may become the subject of judicial investigation, the expression of those opinions is often the best and most direct evidence of character, addressing itself primarily to the mind of the witness, and forming the basis of his statement before the jury. So, too, rumors and reports which the witness has heard, respecting the man whose character he deposes to, naturally serve to form the general estimate, and to evidence it to the witness. Opinions, therefore, and rumors and reports, concerning the conduct or particular acts of the party under inquiry, are the source from which, in most instances, the witness derives whatever knowledge he may have on the subject of general reputation; and, as a test of his information, accuracy and credibility, but not for the purpose of proving particular acts or facts, he may always be asked on cross-examination as to the opinions he has heard expressed by members of the community, and even by himself as one of them, touching the character of the defendant or deceased, as the case may be, and whether he has not heard one or more persons of the neighborhood impute particular acts or the commission of particular crimes to the party under investigation, or reports and rumors to that effect.

[Moulton v. The State.]

Our decisions fully sustain the competency of this kind of testimony.—*DeArman v. State*, 71 Ala. 351; *Ingram v. State*, 67 Ala. 67; *Jackson v. State*, 78 Ala. 472; *Tesney v. State*, 77 Ala. 33.

But this court has never held that it was proper, even on cross-examination, to elicit the witness' knowledge of the conduct, or of particular acts of a defendant, or other person whose character is involved in the issue; but, on the contray, its expressions, when referred to the facts of the cases, are in perfect harmony with all the text-writers who touch on the point, and with an unbroken line of cases adjudged by courts of last resort, and which are uniform to the effect, that such evidence is incompetent and inadmissible.—*Engleman v. State*, 2 Ind. 91; s. c., 52 Amer. Dec. 494; *Redman v. State*, 1 Blackf. 96; *Com. v. O'Brien*, 119 Mass. 345; *Peterson v. Morgan*, 116 Mass. 350; *Gordon v. State*, 3 Iowa, 415; *State v. Arnold*, 12 Iowa, 487; *Regina v. Rawton*, 10 Cox, C. C. 25; *Teese v. Huntington*, 23 How. (U. S.) 2; Whart. Cr. Ev. 61.

The court below erred, therefore, in allowing the testimony objected to to go to the jury.

We have carefully examined the other exceptions reserved, but discover no error in the rulings on the trial other than that pointed out above.

The judgment of the City Court is reversed, and the cause remanded.

(On application for re-hearing.)

SOMERVILLE, J.—We are urged to reconsider our ruling, made in this cause, in which we held that *particular facts* could not be elicited by the State, on *cross-examination*, to rebut or weaken evidence of the defendant's good character.

It has often been held that, on *direct* examination, the evidence must be confined to general reputation; and that no evidence is allowed of *particular acts* of good or bad conduct, either to sustain or to impeach character.—*Jones v. State*, 76 Ala. 9; *Hussey v. State*, 87 Ala. 121. To thoroughly comprehend the scope of this rule, we must understand the reasons upon which it is founded, which are the following: (1.) Every person is supposed to be capable at any time of sustaining his general reputation; but it would be unreasonable to expect any one to be prepared, without special notice,

to answer an assault on his character imputed by *particular acts* of bad conduct.    (2.)    To allow such evidence, moreover, would lead to the  mischief of raising any  number of collateral issues, the trial of  which  might  be almost interminable, and  otherwise objectionable as diverting the mind of the jury from the main issue.—2 Taylor on Ev. (7th  Eng. Ed.), ·§470.

The purpose of the inquiry  being to ascertain the general credit which a man has obtained in  public opinion—whether justly or unjustly is not the question—the evil  and  injustice of  opening  on his head a Pandora's  box of specific indictments, of  which  he had  no notice, and · which  he had  no opportunity to answer, would  be just as great on  cross-examination as on the examination in chief.    The objection goes to the nature of  the evidence, and not to the time or mode of its introduction.

It is true that we have held that one is competent to testify to the good character of  another, whom  he has  known sufficiently  well. for  years, although  he has  never heard such character discussed.    This is not on the  principle, that such testimony is based on  the  witness' knowledge of  particular acts of honesty, or charity, or humanity, or of other good conduct, but on the  well known  fact, that " the best character is generally that which is the least  talked about."    This is mere *negative* evidence of good character,  which  is frequently  the  most  satisfactory kind.—*Hussey  v.  State*, 87 Ala. 122.  ·

In several  cases we have said, in general terms, that while particular acts of bad  conduct are  not admissible to assail character on the  direct  examination, a witness  deposing to general character may  be cross-examined as to  particular facts, in order to test the soundness of his opinion, and elicit the *data* on which it was founded.—*Jackson v. State*, 78 Ala. 471; *Steele v. State*, 83 Ala. 20.    The same is said generally by the text-writers on the laws of  evidence.—1 Taylor on Ev. § 352; 2 Starkie on Ev. * 304.    By this is meant, not the *truth* of  such particular  facts, but  circulating *rumors* of them, which form  a part of the general repute, and help to make up one's good or bad character.    This principle is illustrated by the old case of  *R. v.  Wood*, 5 Jurist, 225, where a witness for a defendant  who was charged with  highway robbery, having testified to his good  character, was  asked on cross-examination whether he had not *heard* that the prisoner was suspected of  having committed a robbery in the neigh-

[Brooks v. The State.]

borhood a few years before. It was objected, that this was a particular fact raising a collateral issue. The objection was overruled by Baron Parke, who observed: "The question is not, whether the prisoner *was guilty* of that robbery, but whether he was *suspected* of having been implicated in it. A man's character is made up of a number of small circumstances, of which his being suspected of misconduct is one." This court has made many rulings of a similar kind, and on a like principle, which will be found cited in the opinion of Judge McClellan in this case.

So fully was this rule established in England, prohibiting evidence of the truth of particular facts affecting character, even on cross-examination, that it was deemed necessary at one time to introduce a single exception to it by statute. This statute provided, that if, upon the trial of any person for a crime, he should give evidence of his good character, it should be lawful for the prosecutor to introduce in rebuttal the *conviction* of such person of a previous offense, or offenses. But even this exception has been recently repealed, as we find stated in 1 Best on Evidence (Morgan's Ed.), § 261, note (v). The only case holding a contrary view, which we have any where found, is that of the *The State v. Jerome*, 33 Conn. 266. There, the prisoner had put in issue his character for chastity, in an indictment for rape. On cross-examination the court allowed one of the defendant's witnesses to be asked, whether a lewd woman had not been an inmate in his house, as a fact conducing to prove that the defendant kept a house of ill-fame. This case is not well considered, and is unsupported by authority.

The court is of one mind, that the application for re-hearing should be denied.