# Way *v*. The State.

## *Murder.*

(Decided April 9th, 1908.  46 South. 273.)

1. *Evidence; Opinion; Facts or Conclusions.*—The witness having tetstified that he had felt a hard object on decedent's body or person shortly before the homicide, it was proper to permit him to testify that in his opinion it was a pistol.

2. *Homicide; Evidence; Circumstances Preceding Act.*—Where the theory of the prosecution was that the defendant and another had conspired to kill decedent, or to do some unlawful act in which the killing resulted, and it appeared that the decedent, a policeman, had been called to a certain house on account of the disorderly conduct of certain parties, it was competent to show by the owner of the house where the killing occurred that just before the killing some boys knocked and kicked upon her door and threatened to break it down, etc.; all that transpired at the time of the killing and prior thereto leading up to the killing being competent to be shown.

3. *Criminal Law; Evidence; Use of an Alias.*—The fact that defendant used an alias, or was known by other names, was competent to be shown.

4. *Evidence; Identification by Voice; Opinion.*—A witness having testified previously that she had talked with accused, and having testified that immediately after the homicide, she saw two persons run by the house where she was, it then being dark, and that she heard one of them make an exclamation, such witness could testify that, in her opinion, it was the voice of accused, notwithstanding the fact that she had testified that she did not recognize the voice.

5. *Same; Order of Proof; Discretion.*—It was within the discretion of the court to require accused to go on with the examination of his witnesses, and subsequently to permit the state to examine a witness upon his arrival, the state having announced, when it closed its testimony, that it had another witness it desired to examine, upon such witness' arrival.

6. *Witnesses; Cross Examination; Character of Accused.*—A witness for accused having testified to accused's general character and his character for peace and quiet and that both were good, it was proper to ask him on cross examination whether people in discussing accused's character would say some good things and some bad things about him.

7. *Words and Phrases; "General Character"; General Reputation.*—General character is the same as general reputation and is determined by how a person is generally regarded or esteemed in the community in which he lives.

8. *Criminal Law; Character of Accused; Particular Acts.*—Where one had testified to accused's good character, it was not permissible

[Way v. The State.]

to ask whether one guilty of getting drunk and going to disreputable places and fighting would have a good character, his reputation being the subject of inquiry.

9. *Same; Evidence; Identity of Accused.*—On the question of identification it is proper to show how long a witness has known defendant, how often and how long he has visited there, and by what name, etc., he was known.

10. *Same; Hearsay Testimony; Incriminating Evidence.*—Statements by another than the defendant, admitting the killing of decedent, were hearsay and inadmissible, nor was the record of the court in a prosecution against such person for the murder of decedent competent evidence.

11. *Same; Evidence; Province of Jury.*—Unless the evidence is so palpably inconclusive as to fail to make out a prima facie case, its weakness is a question for the jury and not for the court, and if its tendencies at all support the charge made or afford inferences to be drawn by the jury in support of the charge, it is properly left to the jury to determine.

12. *Same; Instructions Covered by Instructions Given.*—It is not error to refuse instructions substantially covered by requested instructions given.

13. *Same; Instructions; Reasonable Doubt.*—A charge asserting that if after a consideration of all the evidence the evidence of the innocence of accused outweighs or overbalances the evidence of his guilt, the jury should acquit, is bad as requiring an acquittal regardless of whether the jury entertain a reasonable doubt as to the guilt of defendant.

14. *Same; Inapt Words.*—A charge asserting that if the evidence was reasonably consistent with defendant's innocence the jury should promptly acquit him, is properly refused on account of the use therein of the word, promptly.

15. *Homicide; Conspiracy.*—If one accused of murder and another went to the house together where the homicide occurred, and an offense was committed by the other from causes disconnected from the common object of their visit, the responsibility for the offense rests on the actual perpetrator and defendant cannot be convicted because he happened to be present.

16. *Same; Malice.*—If defendnt aided or abetted another in the commission of the killing it is not essential to defendant's guilt that he knew of the existence of malice on the part of the other person.

17. *Same.*—If defendant aided or abetted another in the commission of homicide it is not essential to defendant's guilt that the other should know of such aiding and abetting.

18. *Criminal Law; Argumentative Instructions.*—A charge is argumentative and properly refused which asserts that if the evidence is reasonably balanced as to defendant's guilt the jury should lean to the side of mercy and acquit him.

19. *Evidence; Circumstantial Evidence; Sufficiency; Test.*—If the circumstances proven are susceptible of explanation upon any reasonably hypothesis consistent with defendant's innocence, then they are insufficient and an acquittal should follow.

20. *Criminal Law; Argumentative Instructions.*—An instruction asserting that the fact, if it was a fact, that accused character was not discussed until after he was charged with the homicide, was not evidence that his character was not good, as under the law the best character is, generally, that the least talked of, and such fact is negative evidence of good character of the most satisfactory kind, was argumentative and properly refused.

21. *Same.*—A charge asserting that in determining whether defendant's flight from the scene of the homicide was from a sense of guilt, the jury should consider the fact that he afterwards surrendered to a deputy sheriff, together with all the other evidence in the case; and that the fact that the state failed to prove a motive for defendant's part in the homicide, if such was the fact, was a circumstance to which the jury might look in connection with all the other evidence in determining whether or not defendant shot deceased; and that it was not encumbent on accused to show what became of the pistol of deceased, if he had one on his person when he was shot, were each properly refused as being argumentative, and as giving undue prominence to particular portions of the evidence.

22. *Same; Instruction Invading Province of Jury.*—Instructions asserting that if the jury believe all the evidence they should find that decedent was killed by a third person; that if they found that such other person fired the shot that killed decedent they should acquit; and that there was no evidence showing a conspiracy or prearrangement between defendant and such third person to kill decedent, were properly refused as invasive of the province of the jury.

23. *Same.*—Although there was no direct evidence on that point, where there was evidence leaving an inference open to the jury to so find it was proper to refuse an instruction asserting that there was no evidence that defendant got deceased's pistol, if he had one when shot.

24. *Same; Duty of Jury.*—A charge asserting that if the jury believe from all the evidence beyond a reasonable doubt that defendant is guilty they should convict, although they believe it to be possible that he is innocent, is proper.

25. *Same.*—In each criminal case, each juror must agree upon the verdict before they can acquit or convict; otherwise it is not a verdict.

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Cliff Way was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Cliff Way was indicted for the murder of one Jones, convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for a term of 13 years. The facts of the case, together with exceptions to evidence, are sufficiently stated in the opinoin of the court.

The following charges were given at the request of the state:

"(1) I charge you, gentlemen of the jury, that if you believe from all the evidence, beyond a reasonable doubt, that the defendant is guilty, though you also believe it is possible that he is not guilty, you must convict him.

"(2) I charge you gentlemen of the jury, that each member of the jury must agree on a verdict before you can convict or acquit the defendant."

The following charges were refused to the defendant:

"(1) If you find from the evidence that Moore fired the shot that killed J. Lem Jones, then I charge you, gentlemen of the jury, that, before you can convict this defendant under this indictment, you must believe from the evidence, beyond all reasonable doubt and to a moral certainty, that this defendant actually participated in the killing of said Lem Jones, or that he and Moore had by preconcert agreed to do some act from which the death of Lem Jones or some other person would proximately result from the doing of such act, or that there was a community of purpose between Moore and this defendant to kill Jones, or do some act from which the death of Jones or some other person would flow as a proximate result of doing such act, or that this defendand aided and abetted in the doing of said act, or aided and abetted Moore in killing Jones. If, after considering all the evidence, you find that Way did not participate in the killing of Jones, and had not agreed with Moore to do some act from which the death of Jones or any other person would flow as a proximate result of the doing of such act, and that this defendant did not aid and abet in the doing of said act, nor aid nor abet Moore in the killing of Jones, then your verdict should be not guilty."

"(37) If, after a consideration of the entire evidence in this case, the evidence of defendant's innocence out-

weighs or overbalances the evidence of his guilt, you should find the defendant not guilty."

"(40) If the evidence is reasonable consistent with defendant's innocence, you should promptly acquit him."

"(62) The court charges the jury that if they believe from the evidence that the defendant and Waymond Moore went to the house of Alice Williams on the night the killing is said to have been done, and an offense was committed by one of them from causese having no connection with the common object for which they went there, the responsibility for such offense rests solely on the actual perpetrator of the crime, and the jury cannot find the defendant guilty simply because he happened to be present at the time the offense was committed."

"(48) If you find from the evidence that Moore fired the shot which killed Jones, and that said killing was done maliciously, still, if Way did not entertain malice towards Jones at the time of the killing, then Way cannot be convicted either of murder in the first or second degree, unless you find that Way, with knowledge of the malice on the part of Moore, aided, abetted, or encouraged Moore in the killing."

"(42) I charge you, gentlemen of the jury, if you believe from the evidence that Moore fired the shot that killed Jones without encouragement from this defendant, your verdict should be not guilty, unless you believe, beyond all reasonable doubt and to a moral certainty, that there was a prearrangement or a conspiracy existing between Way and Moore that Moore should kill him."

"(3) If from the evidence in this case you find that Moore and Way had not by preconcert or agreement conspired to kill Jones, nor to do any other unlawful act from the doing of which the death of Jones would naturally and proximately result, and if you further find that

Moore fired the shot that killed Jones, then, if this be so, I charge you that, before you can convict this defendant, Way, on the ground that he aided or encouraged Moore by acts or words at the time Moore shot Jones, if he did shoot him, you must believe, beyond all reasonable doubt and to a moral certainty: (1) That said act or words were done or spoken by Way at the time of the shooting; (2) you must believe, beyond all reasonable doubt, that Moore had knowledge of said acts or words if done or spoken; and (3) you must believe, beyond all reasonable doubt, that Moore had knowledge that said act or words were done or said for the purpose of aiding and abetting him in the killing of Jones."

"(10) If, from evidence in this case, you find that Moore fired the shot that took the life of Jones, then before this defendant, Cliff Way, can be found guilty of said killing, you must find from the evidence, beyond all reasonable doubt, that Moore and Way entered into a conspiracy to do so by some understanding or agreement beforehand, or that Way aided or abetted in said killing; and I charge you, gentlemen of the jury, that the mere fact that Way was present when the killing was done, if he was present, would not of itself alone be sufficient to constitute Way an aider or abettor of Moore, unless Way was present to the knowledge of Moore with intent to aid him. In order to constitute Way an aider or abettor of said killing, he must have been present by preconcert, special or general, or at least to the knowledge of Moore, with the intent to aid him, provided there was no assistance given by Way to Moore, or words uttered encouraging Moore to do the shooting, or such conduct, demonstrations, or menaces on the part of Way as would aid, incite, encourage, or induce Moore to do the killing. And if, after a consideration of all the evidence in the case, you are not convinced, beyond all reasonable doubt,

that there was such a conspiracy beforehand, or aiding or abetting at the time of the killing, your verdict should be not guilty."

"(43) If the evidence is evenly balanced as to the guilt or innocence of defendant, then you, gentlemen of the jury, should lean to the side of mercy, and decide in favor of the defendant."

"(33) The test of the sufficiency of circumstantial evidence in a criminal case is whether the circumstances, as proven, are capable of explanation upon any reasonable hypothesis consistent with the defendant's innocence, and if they are capable of such explanation, then the defendant should be acquitted."

"(681-2) The fact, if it be a fact, that defendant's character was not discussed until after he was accused of killing Jones, is not evidence that his character is not good. Under the law, the best character is generally that which is least talked about. This is negative evidence of good character which is frequently the most satisfactory kind."

"(35) In determining whether the defendant's flight from the scene of the shooting was from a sense of guilt or not, you can look to the fact, if it be a fact, together with all the evidence in the case, that defendant surrendered himself to the deputy sheriff of Lawrence county."

"(41) Gentlemen of the jury, the fact, if it be a fact, that the state has failed to prove a motive upon the part of this defendant to shoot Lem Jones, if such is the fact, is a circumstance to which you may look in connection with all the evidence in determining whether he shot Jones."

"(50) I charge you, gentlemen of the jury, that, if you believe all the evidence in this case, you should find that the deceased Jones, was killed by Waymond Moore.

"(51) If, after considering all the evidence, you find

that Moore fired the shot that killed Lem Jones, your verdict in this case should be not guilty.

"(52) I charge you, gentlemen of the jury, that there is no evidence in this case showing a conspiracy or pre-arrangement on the part of this defendant and Moore to take the life of Jones.

"(53) There is no evidence in this case that the defendant, Way, entered into a conspiracy with Moore to kill Jones."

"(65) It is not incumbent on the defendant in this case to produce evidence to show what became of policeman Jones' pistol, if he had one on his person at the time he was shot, if you find that he was shot."

"(66) There is no evidence in this case that the defendant got Jones' pistol, if he had one at the time he was shot."

BROWN & KYLE, and WERT & LYNN, for appellant. There is not the slightest evidence of conspiracy.—*Nail v. The State,* 70 Miss. 32; *Ochs v. People,* 124 Ill. 399; *U. S. v. Frisbee,* 128 Fed. 808; 122 Mass. 43; 46 Mich. 268; 40 N. Y. 221; *Morris v. The State,* 41 South. 274; 2 McClain's Crim. Law, sec. 989; 8 Cyc. 685; 34 E. L. C. 744; 75 Cal. 407. Charge 37 should have been given.— *Bain v. The State,* 74 Ala. 39; *Browning v. The State,* 30 Miss. 656; *Howard v. The State,* 108 Ala. 576; *Morris v. The State, Supra..* Charge 40 should have been given.—*Neilson v. The State,* 40 South. 222. Charge 62 should have been given.—*Evans v. The State,* 109 Ala. 15. Charges 3, 10, 42 and 48 and 1 should have been given.—*Morris v. The State, supra.* Charge 43 should have been given.—*Hughes v. The State,* 117 Ala. 26. 33 should also have been given.—*Bowan v. The State,* 140 Ala. 67; *Pickket v. The State,* 115 Ala. 70. Charge 35 should have been given.—*Sylvester v. The State,* 71 Ala.

23; *White v. The State*, 111 Ala. 97. Charge 68½ should have been given.—*Moulton v. The State*, 88 Ala. 121; *Huzzey v. The State*, 87 Ala. 133. Counsel discuss other charges without citation of authority. The objection of the defendant to the questions of the solicitor to the witness Callahan should have been sustained.— *Thompson v. The State*, 100 Ala. 70; *Engleman v. The State*, 52 Am. Dec. 494; 81 Ia. 17; 68 Miss. 233; 57 Kan. 537; 6 L. R. A. 301. The witness should not have been allowed to have given her opinion in regard to the voice she heard, she having testified she did not recognize it.

ALEXANDER M. GARBER, Attorney General, and CALLAHAN & HARRIS, for the State. The court did not err in reference to the admission of testimony of Alice Williams.—*Martin v. The State*, 89 Ala. 118. Counsel discuss refused charges and other assignments of error but without citation of authority.

DOWDELL, J.—The defendant was indicted for the murder of J. Lem Jones, was tried and convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for a term of 13 years. From the judgment of conviction the present appeal is prosecuted.

The defendant complains that errors prejudicial to him were committed on the trial in rulings of the court on evidence, and the refusal to give certain instructions to the jury requested by him in writing. The first ruling of the court complained of as error was in permitting the witness McClusky, against the defendant's objection, to testify that the hard object which witness felt on the person of the deceased a short while before the killing was, in witness' opinion, a pistol; the witness having already testified that, when he met Jones, the deceased,

he put his hand on him and felt "a hard object on his right side on the inside of the waistband of his breeches." The expression of opinion in this connection was nothing more than the statement of witness' judgment as to what the hard object was he felt. We see no good reason why a witness may not,from having felt an object, state his judgment of what the object was. The witness stated that he pressed his hand against the object, and it seemed to him that what he felt was the handle of a pistol. We think this evidence was competent, and the ruling of the court in admitting it free from error.

It was competent to show all that transpired at the time of the killing, and which occurred prior thereto leading up to and explanatory of the tragedy, and hence the evidence of the woman Alice Williams, at whose house the killing occurred, that some boys were knocking and kicking at the door and threatening to break in, etc., was relevant and admissible. It was likewise permissible to show that the defendant was at the time called by the name of "Will Wade," a name other and different from his true name. Jones, the deceased, was a policeman, and, in the discharge of his duties as such, was drawn to the place of the tragedy by the disorderly conduct of certain parties. There was evidence tending to show that one Waymond Moore fired the shot that killed Jones. One of the theories of the state was that there was a conspiracy on the part of the defendant and the said Moore to kill Jones, or a common purpose on their part to do some unlawful act, in the doing of which, and as a consequence from which, followed the killing. On this theory, if the defendant and Moore were the boys who were knocking and kicking the door and threatening to break in, it was a circumstance to be considered by the jury in connection with the other evidence as tending to support the state's theory. In prov-

ing a conspiracy, a circumstance or fact, when considered independently, [may have little · or no probative force; but, when considered collectively with other facts, may furnish the link to complete the chain. Hence, where a conspiracy or preconcert of action is to be shown by circumstantial evidence, in the very nature of things, the proof may sometimes take a wider range than proof in ordinary cases.

The witness Alline Gibson testified to having seen two persons, immediately after the shooting, running by the house in which the witness was, and away from' where the shooting was done, one behind the other about 15 feet. It was dark, but she saw that one was taller than the other. She heard one exclaim to the other: "God damn it! come on!" She was then asked if she recognized the voice, and she answered that she did not. The witness was then asked by state's attorney if she had ever heard the voice before. The question was objected to by the defendant on several grounds, one of which was that the witness had already testified that she did not recognize the voice. The court overruled the objection, and the witness answering said: "Yes, in my judgment it was the defendant Way's voice." A motion was made to exclude the answer, which was overruled. In this there was no error. The witness may not have recognized the voice—that is to say, have known positively whose voice it was—yet it was permissible for her to testify her best judgment, having previously been with the defendant and heard him talk.

It was within the discretion of the court, when the state announced that it had finished its testimony with the exception of one witness, who was absent, but expected to come in later on a train, to require the defendant to proceed with his evidence, and to subsequently permit the state to examine such absent witness upon his coming in.

The defendant's witness John Callahan, having testified, on his direct examination, that the defendant's character was good, and that his character for peace and quiet was good, the witness was then asked, on cross-examination by the state, the following questions: "If a man was guilty of getting drunk and going to disreputable places and fighting, would that person have a good character?" "These people, in discussing the defendant's character, would some say good things about him, and some say bad things about him?" These questions were separately objected to by the defendant. As to the second of the above questions, there can be no doubt but that the inquiry was proper, and the evidence sought was competent. The inquiry, at least, went to the accuracy of the witness' statement of the defendant's general character. But we cannot say the same as to the first of the two questions asked above. "General character" is the same as "general reputation." and is determined by how the person is generally regarded or esteemed in the community in which he lives. Hence, as was said in the case of *Moulton v. State*, 88 Ala. 118, 6 South. 758, 6 L. R. A. 301: "A witness to character cannot speak of particular acts, or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives." And so, too, it was held in that case that the cross-examination of a character witness must be conducted within the limits of this inquiry. The question asked was as to the particular acts and conduct, and could have had reference to no one than the defendant. It was without the rule above laid down. Nor was the question proper, or the evidence sought competent, on the suggestion made by counsel for the state, to ascertain witness' standard of what it took to constitute good character. The answer to the suggestion is: The

issue does not involve witness standard of good charac-
ter. The issue is good or bad repute in the community in
which the person lives, whose character is inquired
about. In overruling the defendant's objection to the
question, the trial court committed reversible error.—
*Moulton v. State,* 88 Ala. 116, 6 South. 758, 6 L. R. A.
301; *Thomson v. State,* 100 Ala. 70, 14 South. 878.

The evidence of the witness Janet Smith, as to how
long she had known the defendant, how often and how
long he had been visiting her house, and by what name
he went, etc., was relevant and admissible on the ques-
tion of identification, and no error was committed in
overruling the defendant's objections to the same.

There was no error in overruling defendant's objec-
tions to questions asked defendant's witness Scott, upon
his cross-examination by the state, in reference to his
not having communicated to state's counsel what he
(witness) knew about the evidence of the witness Tay-
lor. This was clearly within the scope and range of a
cross-examination of the witness.

It was wholly immaterial under what charge the de-
fendant's witness Taylor was arrested and carried to
Huntsville, and the court committed no error in sustain-
ing the state's objection to this evidence.

The defendant sought to prove, by the witness Harry
Copeland, statements made by Waymond Moore to the
witness that he (Moore) shot and killed the deceased.
This was purely hearsay evidence, and was properly ex-
cluded. Nor was the record in the case of State v.
Moore charged with the killing of the deceased compe-
tent in evidence.

We have now considered the exceptions reserved on
the introduction of evidence in the order presented by
the record. Counsel for appellant lay much stress in
brief and argument on the weakness and, what they

[Way v. The State.]

urge to be, the inconclusive nature of the state's evidence. Wherever the evidence in its tendencies at all supports the charge made, or affords inferences to be drawn by the jury in support of the charge, the weakness of the evidence is a question for the jury, and not for the court, unless it is so palpably inconclusive as to fail to make a prima facie case.

Charge No. 1, refused to the defendant, was not free from involvement, and calculated to confuse the jury. Moreover, every proposition of law contained in this charge the defendant got the benefit of in the subsequently given charges 8, 17, and 18 requested by the defendant.

Charge 37, requested by the defendant, is subject to the criticism that it does not hypothesize a finding by the jury of that which is postulated in the charge. It may well be that what is hypothesized, if so found by the jury, would furnish just foundation for the existence of a reasonable doubt of the defendant's guilt. The charge, however, requires an acquittal without regard to whether the jury entertain a reasonable doubt of guilt. The charge, we think, as framed, is not free from misleading tendency.

Charge 40, requested by the defendant, was pronounced by this court good in the case of *Neilson v. State,* 146 Ala. 683, 40 South. 222-223, and its refusal was error. We, however, are now of the opinion that the employment of the word "promptly" in the charge might well have justified its refusal. We are satisfied that in the *Neilson Case, supra,* the employment of the word "promptly" in the charge was overlooked.

A charge similar to charge 62, requested in this case, was held to be a proper instruction in the case of *Evans v. State,* 109 Ala. 11, 19 South. 535. See charge 30 in that case. -

5 C

Charge 48, requested by the defendant, does not correctly state the law, and was properly refused. If Way aided or abetted Moore in the killing of Jones, it is not essential to Way's guilt of murder that he should have had knowledge of the existence of malice on the part of Moore.

Charge 42, if free from any and all objection, no reversible error was committed in its refusal, since it was substantially covered by given charges 8, 17, and 18.

If the defendant aided and abetted Moore in the killing of Jones, it was not essential to the defendant's guilt that the said Moore should have had knowledge of such aiding and abetting. Hence charges 3 and 10 were properly refused for this reason, if no other.

Charge 43 was properly refused.

Charge 33 was by this court, in the case of *Bowen v. State*, 140 Ala. 67-70, 37 South. 233, held a good charge, and its refusal constituted reversible error. This charge should have been given.

Charge 68½ is argumentative, besides being faulty in other respects, and was therefore properly refused.

Charge 35 is argumentative, besides pointing out and giving undue prominence to particular evidence, and was properly refused. The same may be said of charge 41.

Charges 50, 51, 52, and 53 were invasive of the province of the jury, and the court properly refused them.

Charge 65 is but an argument, and there was no error in its refusal.

While there was no direct evidence that the defendant got the pistol of the deceased, still there was evidence which left an inference of such a fact open to the jury. Consequently, charge 66 should not have been given.

We have considered the charges refused to the defendant insisted on in argument, and in the order treated of

[Robinson v. The State.]

in brief. There are other refused charges, but they are such as are covered by given charges, or so palpably faul-ty as to require no mention.

The two charges, given at the request of the state, are free from fault.

For the errors pointed out, the judgment is reversed. Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.