26 So.2d 424

### AUSTIN v. STATE.

8 Div. 423.

Court of Appeals of Alabama.

June 4, 1946.

Herbert Carmichael, of Tuscumbia, for appellant.

Wm. N. McQueen, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

After proving, without dispute, that John C. Darigan, the deceased, came to his death as the result of being struck on the side of his head by the defendant with an iron, or steel, bar, called "a cylinder head slide bar," the State called Mr. H. W. Renegar, who testified, in substance, that he was the foreman at the roundhouse on the night of the homicide; that he was about 200 feet away from the engine on which the deceased and the defendant were working and near which the deceased fell when he was struck; that he saw the deceased when he came to work and that he appeared to be "glassy-eyed;" that in the opinion of the witness, the deceased was not drunk and that he did the work to which he was assigned that night, or was completing it at the time he was killed; that he heard of the homicide soon after it occurred, and that he went to the spot where the body of the deceased was lying on the ground near the engine; that he assisted in getting the body of the deceased into an ambulance for transportation to the hospital; and that he smelled no intoxicating liquor on the person of the deceased. This witness testified that the defendant at that time made a statement to him as to how the tragedy occurred. This statement was said by the witness to have been voluntarily made,

without fear and without the hope of any reward. This witness further testified that when he saw the deceased laying on his back, he asked the defendant what's the matter, and that the defendant said, "He (the deceased), called me some kind of bastard and I hit him;" that the defendant showed the witness the cylinder head slide bar with which the defendant said he struck the deceased; that he did not remember anything else that the defendant said at that time.

The State also called Harrison Griffin as a witness who testified that he was the defendant's helper at the Southern Shops on the night Mr. Darigan, the deceased, was hit by the defendant, but that he was not present at the time the blow was struck; that he had been sent off to get a set bar and that when he returned, he saw the deceased lying on the ground, and he also saw the defendant standing up beside the engine; that he thought he saw Mr. Cooper there; that he was not present when Mr. Renegar came up, but that he heard the defendant make a statement about him having hit the deceased; that he asked the defendant what was the matter and that the defendant said the deceased cursed him, that is, that the deceased called him "a crazy bastard". On being asked if the defendant told the witness that the defendant struck the deceased because the deceased called him "a crazy bastard," the witness replied: "No sir, said he had to hit him, that is all he said."

The above and foregoing was in substance all of the testimony offered by the State as to the res gestae of the homicide.

The defendant testified as a witness in his own behalf and the aforementioned Mr. Cooper also testified as a witness in behalf of the defendant. Without going into the details of their testimony, suffice it to say that the testimony offered by the defendant tended to show that he struck the deceased with a cylinder head slide bar in self-defense; that when he struck the deceased, the deceased had a Jimmy bar with which he was then and there about to strike the defendant. During the examination of Mr. Cooper as a witness for the defendant, he testified that prior to the homicide, the defendant was a man of good character, and

as to this, he was vigorously cross-examined by the State Solicitor. During that cross-examination, the following occurred:

"Q. You say his reputation is good? A. Yes, sir.

"Q. I will ask you whether or not, Mr. Cooper, you ever heard that he hit Mr. Menne down at the Shop with a return bend, you heard about that? A. I heard it rumored, yes sir.

"Q. Did you ever hear about the time he cut Hop Smith down there with a knife? A. I don't think I did.

"Q. Did you ever hear about the time he ran him and hit him with his fist? A. I heard they were playing in the bathroom and he hit him with his fist.

"Q. Did you ever hear about the time down at the Shop he threatened W. T. Darrah with a knife? A. I don't think I ever heard that.

"Q. Did you ever hear about him getting after W. T. Darrah with a knife? A. No, sir.

"Q. Did you ever hear about him getting after Mr. Earnest Earp down there with a knife? A. No, sir.

"Q Would you say a man who had knocked another man in the head with a return bend and had hit a man with his fist down there, was a man of good character?

"The defendant objects on the ground it is illegal. No Ruling.

"Q. I asked him if he'd heard he had done these things, if in his opinion he was a man of good character in the community in which he lives?

"The defendant objects. It is clearly illegal. Objection overruled. The defendant excepts.

"Q. Would you say a man who had done these things you've heard he had done, was a man of good reputation and a man of good character in the community in which he lives, Mr. Cooper? A. Under the conditions I heard them I would say he was."

<span style="filler"></span> In an able and illuminating brief filed in this case by the Attorney General, it is admitted that the question to which the defendant objected in the foregoing

374

cross-examination by the Solicitor was illegal, but the insistence is made that the question is not presented to this court for review for the reason that no ruling of the court was made and no exception was reserved by the appellant. An analysis of the foregoing shows that to the first objection, interposed by the defendant, no ruling was made by the trial court and no answer was elicited from the witness. The second time the question was asked, the defendant objected upon the ground that said question was clearly illegal and the court overruled the objection. To this action of the court the defendant excepted. Immediately afterwards the question was again repeated to the witness, and the witness answered in response thereto that under the conditions he heard the things inquired about by the Solicitor, he would still say that the character of the defendant was good. That answer was brought out by the State. When the defendant attempted to show by the witness what the conditions were to which he referred, the State objected, and the court sustained the objection and refused to permit the witness to testify what the conditions were under which he heard the various things as having been done by the defendant concerning which he was asked by the Solicitor. In the case of Way v. State, 155 Ala. 52, 46 So. 273, 278, a witness for the defendant had testified that the defendant's character was good, and on cross-examination, by the State, he was asked the following question: "If a man was guilty of getting drunk and going to disreputable places and fighting, would that person have a good character?" Said question was objected to by the defendant and with respect to this objection, our Supreme Court said:

" 'General character' is the same as 'general reputation,' and is determined by how the person is generally regarded or esteemed in the community in which he lives. Hence, as was said in the case of Moulton v. State, 88 Ala. [116], 118, 6 So. 758, 6 L.R.A. 301: 'A witness to character cannot speak of particular acts, or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neigh-

borhood in which he lives.' And so, too, it was held in that case that the cross-examination of a character witness must be conducted within the limits of this inquiry. The question asked was as to the particular acts and conduct, and could have had reference to no one else than the defendant. It was without the rule above laid down. Nor was the question proper, or the evidence sought competent, on the suggestion made by counsel for the state, to ascertain witness' standard of what it took to constitute good character. * * * The issue is good or bad repute in the community in which the person lives, whose character is inquired about. In overruling the defendant's objection to the question, the trial court committed reversible error. Moulton v. State, 88 Ala. 116, 6 So. 758, 6 L.R.A. 301; Thompson v. State, 100 Ala. 70, 14 So. 878."

 It is evident, in this case, that the State was endeavoring to break down Mr. Cooper as a character witness, and to minimize the effect of his testimony as to the good character of the defendant, but the State went about this in an improper way. In the Way case, supra, our Supreme Court held that it was reversible error for the trial court to overrule the defendant's objection to the question asked by the State on cross-examination of the witness, John Callahan. And so it is our opinion that the trial court committed reversible error in the case at bar in overruling the defendant's objection to the question objected to. The defendant put in a timely objection to said question and reserved an exception to the action of the trial court in overruling said objection. The State pursued identically the same tactics with respect to the testimony of W. L. Smith, William Alfred Wall, Jim Henderson, Jim Isbell, Richard Beck, John B. Hackworth, Jr., Tom Gibbs, Charles Artle, George Jackson, Dr. C. R. Whitman, and O. P. Wallace, each and all of whom testified as to the good character of the defendant. It is true that no objection was made to the illegal questions propounded to these witnesses as to particular acts of the defendant, or with respect to the course of his conduct. The defendant had strenuously objected to simi-

lar questions propounded to the witness, Cooper, which were admittedly improper and illegal, but without being sustained by the trial court. Defendant and his counsel evidently were of the opinion that continued objection to improper questions propounded to subsequent witnesses would receive the same treatment at the hands of the trial court and so did not object.

That the defendant was entitled to a fair and impartial trial before a fair and impartial jury, under the Constitution and Laws of this State, cannot be successfully denied. The defendant was entitled to such a trial in the case at bar. We do not think from what appears in this record that the defendant received the kind of trial to which he was entitled, and this because the trial court permitted the State to go far afield and ask improper and illegal questions to practically every witness who testified that the defendant was a man of good character.

We do not think it necessary to consider other objections and exceptions to the testimony made by the defendant during his trial to other phases of the evidence in view of the conclusion that we have reached above.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.