[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 822 
The appellant, James Lacy, was convicted of two counts of criminal conspiracy under § 13A-4-3, Code of Alabama 1975, to commit the crime of trafficking in cannabis and was sentenced to 20 years' imprisonment and was ordered to pay fines and costs. His motion for a new trial and his motion to reconsider his sentence were denied by the trial court after a hearing. This appeal followed.
 I
The appellant challenges the sufficiency of the evidence to support his convictions for criminal conspiracy because, he says, the State failed to prove that he had agreed to traffic in cannabis or marijuana. Campbell v. State, 479 So.2d 1294
(Ala.Crim.App.), aff'd, 479 So.2d 1299 (Ala.), cert. denied,474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985).
Section 13A-4-3(a) states:
 "(a) person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement."
In addition, § 13A-12-231(1) provides that
 "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which shall be known as 'trafficking in cannabis.' "
In Zumbado v. State, 615 So.2d 1223 (Ala.Crim.App. 1993), we discussed the proof necessary to support a conviction for conspiracy:
 " 'The elements of conspiracy are: first, the specific intent that a crime be performed; second, an agreement with another person to engage in or cause that crime to be performed; and third, the commission of an overt act by one of the conspirators in furtherance of the conspiracy.' Greer v. State, 563 So.2d 39, 40
(Ala.Cr.App. 1990)."
" '. . . .
 " ' "[S]uch unlawful community of purpose entered into as a conspiracy need not be proven by positive testimony. It is rarely so to be shown. It must be determined by the triers of fact from the testimony . . .; that of the attendant *Page 823 
circumstances applying and accompanying the doing of the act, and from the conduct of the defendant subsequent to the criminal act."
 " 'Lash v. State, 244 Ala. 48, 53, 14 So.2d 229, 232 (1943). A conspiracy "may be shown by circumstantial proof, or inferred from the conduct of the participants in the execution of the conspiracy." Skumro v. State, 234 Ala. 4, 7, 170 So. 776, 779 (1936).' "Greer, 563 So.2d at 40-41."
Zumbado v. State, 615 So.2d at 1242.
Count I of the indictment charged the appellant with agreeing with William Burns to traffic in cannabis and in furtherance of that crime, Burns delivered or brought into Lamar County, Alabama, more than one kilo (2.2 pounds) of cannabis. Count II charged the appellant with agreeing with William Burns to traffic in cannabis and states that in furtherance of this crime, the appellant arranged for storage of the cannabis and agreed to take possession of and to pay for the cannabis.
The thrust of the appellant's argument is not that no agreement to traffic in cannabis ever existed between William Burns and him. Instead, he alleges that Burns was an accomplice and, as such, his testimony required corroboration and that there was no corroboration.
The relevant difference between conspiracy and accomplice liability is that
 " 'while an agreement is an essential element of the crime of conspiracy, aid sufficient for accomplice liability may be given without any agreement between the parties.' W. LaFave A. Scott, Substantive Criminal Law § 6.8 at 156-57 (1986). See Harris v. State, 177 Ala. 17, 59 So. 205, 207 (1913); Way v. State, 155 Ala. 52, 46 So. 273, 279 (1908)."
Chisler v. State, 553 So.2d 654, 664 (Ala.Crim.App. 1989), cert. denied, 495 U.S. 961, 110 S.Ct. 2572, 109 L.Ed.2d 753
(1990). Alabama cases have often "used the terminology and standards of conspiracy law to find [accomplice] liability. However, while 'conspiracy and complicity are not identical [and] it is possible to have either without the other' . . . 'the two normally go hand-in-hand.' R. Perkins R. Boyce, [Criminal Law § 5] at [702 and] 703 [(3d ed. 1982)]." Chisler, 553 So.2d at 665.
Burns testified at trial that on a number of occasions before his arrest, he had contacted the appellant to tell him of the availability of quantities of marijuana and that the appellant had agreed to buy the marijuana from him. He also testified that the appellant stored this marijuana in a barn on his property and in Atlanta, Georgia. Burns further testified that in the days just before his arrest, he left Texas with over 200 pounds of marijuana that he intended to sell in Illinois and Michigan. He testified that when he was unable to sell it all, he called the appellant to see if he wanted the remainder, approximately 75 pounds. Burns then stated that the appellant told him that he did not have enough money to pay for all the marijuana, but that if Burns wanted to bring it to Alabama, he would pay him for part of the shipment and then sell the rest to pay the balance. Upon reaching Vernon, Alabama, in Lamar County, Burns contacted the appellant and met him at a convenience store. Burns told the appellant that the police were following him and he said that the appellant told him to take the marijuana to his barn and gave Burns the keys to the barn door. Burns was on the way to the appellant's barn when the police stopped him and arrested him after a search of his car revealed the 75 pounds of marijuana.
Sylvia Rodriguez, who was living with William Burns at the time of his arrest, testified that the appellant had once met with Burns in Texas for the purpose of making a deal to purchase marijuana and that after the appellant left Burns had a large sum of cash that he did not have before the appellant arrived. Rodriguez then testified that Burns made a telephone call to the appellant from Michigan regarding selling the appellant the unsold remainder of the marijuana. Burns and Rodriguez then drove to Vernon in Lamar County and went first to the appellant's barn where the appellant was supposed to be waiting for them. After determining that the appellant was not there, they drove to the convenience store to use the telephone and contact the appellant. *Page 824 
Joseph Romano, the appellant's former brother-in-law, testified that the appellant called him within 24 hours of Burns's arrest. Romano further testified that the appellant told him that an individual had been arrested with a quantity of marijuana in his car and that the appellant had met this person at a convenience store and had given him the keys to the appellant's barn. Romano testified that the appellant also told Romano that this individual had come to Vernon to deliver marijuana to him.
Based on this evidence, the State clearly made a prima facie case of criminal conspiracy against the appellant and, therefore, no corroboration was required.
 "[W]hile there is no difference in the punishment of principals and accomplices, see West v. State, 25 Ala. App. 492, 149 So. 354 (1933); Ala. Code § 13-9-1 (1975), (repealed); Ala. Code (1975), § 13A-2-23, the penalty for conspirators is generally one class lower than that imposed upon participants in the object crime. See Ala. Code (1975), § 13A-4-3(g)(1)-(7)."
Chisler, 553 So.2d at 664. Further, even if we were to assume that the case involved accomplice liability, the testimony of Joseph Romano and Burns's possession of the keys to the appellant's barn when he was arrested, plus other evidence adduced at trial, provided sufficient corroboration to support, if necessary, the appellant's conviction by accomplice liability.
 II
The appellant argues that alleged instances of trial court error and prosecutorial misconduct had the cumulative effect of depriving him of a fair trial and due process of law.
The first error allegedly occurred when the State asked the chief of the Vernon Police Department what information a confidential informant had given him regarding the shipment of marijuana in question in this case. The appellant objected and the trial court sustained the objection as to any hearsay. Next, the appellant made another hearsay objection and the court required the State to rephrase its question. In neither instance was there an adverse ruling on which to predicate error.
Next, the appellant alleges that prosecutorial misconduct occurred when the State attempted to offer two police incident offense reports into evidence. The appellant objected, and the trial court ruled that the reports were inadmissible at that time. The appellant did not request a curative instruction and he did not make a motion for a mistrial. Again, there was no adverse ruling by the trial court. See Green v. State,591 So.2d 576, 578 (Ala.Crim.App. 1991).
The next error complained of occurred when the trial court overruled, on the grounds that Burns was a co-conspirator and the statement was part of the res gestae, the appellant's hearsay objection to an arresting officer's testimony regarding a conversation between Burns and the officer at the time of Burns's arrest. While it was error to admit statements made by a co-conspirator before the existence of a conspiracy was established, this error was cured by the subsequent introduction of evidence tending to prove such a conspiracy.Rodgers v. State, 624 So.2d 682, 684 (Ala.Crim.App. 1993). See also Maddox v. Ennis, 274 Ala. 229, 147 So.2d 788 (1962) (erroneous admission of irrelevant evidence cured by subsequent introduction of necessary preliminary or connecting proof).
The appellant next objected to the State's introduction of a sheet of letterhead stationery bearing the name of the appellant's quarterhorse business, which was found in Burns's wallet at the time of his arrest. Because the appellant did not know of the existence of the evidence until it was produced by the State, the trial court suppressed this evidence. The appellant claims that having the letterhead stationery marked for identification in front of the jury constituted prosecutorial misconduct. Again, the appellant did not ask for a curative instruction nor did he make a motion for a mistrial and again the record reveals no adverse ruling by the trial court. Green.
The appellant also alleges that the trial court erred when it overruled his objection to the State's eliciting testimony from Burns regarding previous marijuana transactions in which the appellant had purchased *Page 825 
large quantities of marijuana from Burns. This ruling was proper as an exception to the general exclusionary rule, which prevents the introduction of such evidence, in that it showed both the criminal intent to perform the underlying offense and a common plan, scheme, or system in committing the offense. See C. Gamble, McElroy's Alabama Evidence § 69.01(5) and (6), respectively. In addition, admission of such evidence is within the sound discretion of the trial court. Nicks v. State,521 So.2d 1018, 1026 (Ala.Crim.App. 1987), aff'd, 521 So.2d 1035
(Ala. 1988), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916,101 L.Ed.2d 948 (1988); Blanco v. State, 515 So.2d 115, 120
(Ala.Crim.App. 1987); McGhee v. State, 333 So.2d 865, 868
(Ala.Crim.App. 1976).
The appellant contends that the trial court erred in allowing the appellant's former brother-in-law, Joseph Romano, to testify about an alleged conversation with the appellant in which the appellant had said he wanted to leave a shipment of marijuana, which he had picked up in South Carolina, at Romano's house in Atlanta, Georgia. The appellant did not object to any of this testimony and is procedurally barred from asserting error here.
Last, the appellant claims prosecutorial misconduct in the State's attempt to elicit testimony from the appellant regarding the letterhead stationery that was previously suppressed. The trial court sustained the appellant's objections to those questions and the appellant did not ask for any curative instructions nor did he make a motion for a mistrial. Again, there was no adverse ruling upon which error can be predicated. Green.
 " 'Because we find no error in the specific instances alleged by the appellant, we find no cumulative error. "Where no single instance of alleged improper conduct constituted reversible error, we do not consider their cumulative effect to be any greater. Sprinkle v. State, 368 So.2d 554, writ. quashed, Ala., 368 So.2d 565
(1978)." Thomas v. State, 393 So.2d 504, 509
(Ala.Cr.App. 1981).'
 "Fisher v. State, 587 So.2d 1027, 1039
(Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala. 1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992)."
Chandler v. State, 615 So.2d 100, 110 (Ala.Crim.App. 1992), cert. denied, 615 So.2d 111 (Ala. 1993).
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.