## STATE v. LEAVITT.

The decision of issues of fact is the province of the jury in the trial court.

Evidence, in a prosecution under Pol. Code, § 3020, for knowingly keeping, using, and controlling glandered horses, **held** sufficient to sustain a conviction.

In a prosecution under Pol. Code, § 3020, for knowingly keeping, using, and controlling glandered horses, brought into the state and sold, there was testimony by the state veterinarian of the state whence they came that about three months before defendant bought the horses witness tested certain horses of the seller, found them afflicted with glanders, and ordered them destroyed, and that at other times before the sale to defendant he examined other horses of the seller, and found them glandered, and that all the horses of the seller, not in quarantine, ran at large on the same ranch, and that glanders was a contagious disease. **Held** admissible.

In a prosecution under Pol. Code, § 3020, for knowingly keeping and using glandered horses, testimony by the state veterinarian of Montana, from which state they were brought after purchase by defendant, as to having ordered horses of the seller into quarantine, and directing that some be destroyed, where defendant was present and engaged in the conversation between the witness and the seller, is admissible, as bearing on the defendant's knowledge of the condition of the horses he bought.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Marshall County; Hon. FRANK McNULTY, Judge.

A. E. Leavitt was convicted of knowingly keeping, using, and controlling glandered horses, and he appeals. Affirmed.

*Sears & Potter* and *R. D. Gardner,* for appellant. *Royal C. Johnson, Atty. Gen., Byron Abbot, State's Atty.,* and *Anderson & Waddel,* for respondent.

McCOY, J. In the circuit court of Marshall county, appellant was charged with and convicted of the offense of knowingly keeping, using, and controlling glandered horses, in violation of section 3020, Political Code. The cause is brought to this court on appeal.

The questions for the determination of this court are of two classes: (1) Did the court err in admitting over the objections of defendant, the evidence of the several witnesses? (2) Is there sufficient evidence in the whole record to support the verdict of the jury? We will take up these questions in the inverse order.

[1, 2] It appears from the testimony of the prosecution that during the latter days of September, 1910, defendant purchased from one Poe, near Miles City, in the state of Montana, some nine head of horses, and took them, together with some six others, to

his farm in the vicinity of Langford, Marshall county; that said horses arrived at the said farm of defendant about October 3, 1910, and that on the 13th of October, 1910, he sold and delivered 12 of said horses to one Hawkins, having, in the meantime, sold and disposed of the remainder of said 15 horses to other parties; that the Poe horses were among the ones he sold to Hawkins. There was evidence, offered on the part of the state, tending to show that the said Poe horses were afflicted with glanders for some time prior to the sale thereof to defendant; that said Poe horses, at the time of the sale thereof to defendant, were in quarantine for glanders under the laws of Montana, and had been condemned and ordered to be destroyed by the state veterinarian of the state of Montana; and the testimony on the part of the state strongly tended to show that defendant was cognizant of and knew, at the time he purchased said Poe horses, that the same were afflicted with glanders, were in quarantine, and had been condemned by the state veterinarian of Montana; that said horses, after said purchase by defendant, were driven by defendant from near Miles City in the state of Montana, to some distant railroad point in the state of North Dakota, and from there shipped to Aberdeen, S. D.; that said horses were in good flesh. Two witnesses on the part of the state testified that, prior to the purchase of said horses by defendant from Poe, defendant's attention was called to the condition of the nose of one of said Poe horses, and that defendant in substance replied that with some dope and a swab he would fix him—clean him up—so he would pass. There was some variation in the evidence as to the identity of some of the horses, but defendant himself testified that he obtained nine of said horses at the Poe ranch. The defendant denied the testimony of the state; but whatever conflict there was in the testimony of the witnesses has been settled by the jury, whose sole province it was to decide the issues of fact submitted. We are of the opinion there was ample evidence to sustain the verdict of the jury.

[3] The state called as a witness one Cheney, state veterinarian of Montana, who testified that in June, 1910, he met and had a business transaction with one Poe. Witness was then

questioned, and answered, as follows: "Q. What was the nature of that transaction? A. It was about a couple of glandered horses. Q. What was done with these two horses? A. They were destroyed. Q. Prior to destroying them, what did you do to them to ascertain what, if any, disease they suffered from? A. They were mallein tested to ascertain the fact that they were glandered." All these questions were answered, over the objections of appellant that the same were irrelevant, incompetent, and not binding on appellant, who was not present and had no knowledge thereof. We are of the opinion this testimony was relevant and properly admitted in evidence. One of the material and controverted issues under the information was whether or not the horses purchased by appellant from Poe, on September 24th, were glandered. The evidence shows that the man, Poe, from whom the defendant purchased the nine horses, or some of them, sold to Hawkins, was the same person with whom the witness Cheney had the transaction in relation to the destruction of the two glandered horses in June, 1910; that the horses purchased by appellant from Poe came from the same ranch; that all the horses of Poe, not in quarantine, ran at large upon the ranch, drinking from the common watering places, and feeding from the same fields.,The evidence also shows that glanders is an infectious and contagious disease. While the two glandered horses destroyed in June might never have been seen or heard of by appellant, still the fact that these two glandered horses existed and were destroyed on the same farm in June, 1910, would have a relevant bearing upon the issue as to whether or not the horses purchased by appellant from Poe in September following were glandered, as tending to show that the horses in question in this suit had been exposed to the disease so recently preceding the disposition thereof to appellant. The witness Cheney testified, over the objections of appellant, that at other times subsequent to the 10th of June, 1910, and before September 24, 1910, he examined other horses on the Poe ranch, and found them glandered.,,We are of the opinion this evidence was material for the same reasons, although the horses examined were or might have been different ones than those purchased from Poe by appellant. Objection was also made to wit-

ness Cheney stating his conclusion as to the condition of the horses so examined by him with reference to glanders; but we are of the opinion such objections were properly overruled, for the reason that the witness had sufficiently qualified himself to give expert opinion evidence, and that the conclusions to which objections were made were in fact the opinions of the witness as a veterinary expert.

[4] Objections were also made to the testimony of this witness as to his ordering the Poe horses into quarantine, and directing the same to be destroped. Presuming, in the absence of any showing to the contrary, the law of Montana to be the same as that of South Dakota, under sections 2979 and 2980, Pol. Code, he would have the power to so order and direct, without much formality; besides, there is evidence in this case tending to show that defendant was present and heard this state veterinarian instruct Poe in regard to such quarantine and destruction of said horses situated on the Poe ranch, and which applied to the horses thereafter purchased by defendant from Poe. Cheney stated that when he engaged in this conversation with Poe, upon a street in Miles City, on the 24th day of September, 1910, a tall, well-dressed gentleman, resembling the defendant, joined in and took part in the conversation in relation to glandered horses, and in relation to the laws of South Dakota in relation thereto. Witness Totten, for the state, testified that on the 24th day of September, 1910, he saw Poe, Cheney, and defendant talking together on the street in Miles City; that later, on the same day, defendant in conversation told him that he (defendant) heard Cheney give Poe a "jacking up" about the horses. Witness Newlands, for the state, testified that he rode in the same buggy with Totten and defendant on the evening of September 24th, when returning from Miles City to the Poe ranch, and heard defendant state that he had heard a conversation between Cheney and Poe in Miles City, in which Cheney checked Poe up pretty badly about the horses. This witness (Newlands) also testified that prior thereto he himself had told and informed defendant that the Poe horses were quarantined for glanders. It also appears in evidence that

defendant stated to Totten that the more he (defendant) found out about the horses, and had Poe know he had found out, the cheaper he could get the horses from Poe. We are of the opinion that the fact the said Poe horses were in quarantine for glanders, under order or direction of an official veterinarian, if defendant had knowledge thereof, was sufficient to put defendant upon notice that such horses were afflicted with glanders, and that such evidence was material and properly admitted.

Some other objections were made and exceptions taken to testimony offered by the state, but it will serve no useful purpose to further refer thereto.

Finding no error in the record, the judgment appealed from is affirmed.

SMITH, P. J., concurs in the conclusion announced.