STATE, Respondent, v. BAILLY, Appellant.

(137 N. W. 352.)

1. **Criminal Law—Rape—Testimony to Contents of Record—Harmless Error.**

In a prosecution for statutory rape, testimony of a Catholic priest that a record of children of his parish showed dates of birth, was harmless error, where objection as to competency of the record to prove date of birth was not made.

2. **Rape — "Intercourse" — Penetration — "Sexual Intercourse" — Sufficiency of Evidence.**

Sexual intercourse includes and means sexual penetration; and where evidence shows defendant solicited prosecutrix to enter a building with him after dusk, told her his desire, said her objection made no difference, and had "intercourse" with her, held, sufficient to warrant a finding of penetration; the term "intercourse," under such circumstances, resulted from sexual passions, and meant sexual intercourse.

3. **Criminal Law—Statements of Counsel to Jury—Discretion of Trial Court—New Trial.**

Where statements of state's counsel to jury in argument were passed upon by trial court and a new trial refused, the Supreme Court will not reverse, although such statements were wholly unwarranted by the evidence and merited censure from this and the court below; this Court not believing the statements could have influenced the jury.

4. **Criminal Law—Rape—Exhibiting Child to Jury Outside Court-room—Harmless Error.**

Where defendant's evidence in a prosecution for rape tended to show that prosecutrix at time of alleged offense was a common prostitute, and that the parentage of any child born to her would be extremely doubtful, the conduct of prosecutrix and her family in exhibiting her child before members of jury in court house corridors during recess was not prejudicial to defendant.

5. **Criminal Law — Sufficiency of Evidence — Conclusiveness of Verdict.**

While under the evidence in a criminal case different minds might well have reached different conclusions under the evidence, the Supreme Court will not reverse a verdict rendered under proper instructions, where jury has resolved facts against defendant.

6. **Criminal Law—Right of Attorneys to Appear For State—Record —Presumption.**

Where the record does not show but what counsel for state were the state's attorney and his assistant, and shows no objection to their appearance for state, the Court will presume there was good and sufficient reason why the state's attorney could not properly try the case, and that the attorneys acting in his place were properly employed by the state.

(Opinion filed July 26, 1912.)

Appeal from Circuit Court, Roberts County. Hon. Alva E. Taylor, Judge.

Charles E. Bailly was convicted of statutory rape. From a judgment of conviction and an order denying a new trial, defendant appeals. Affirmed.

*T. J. McElligott, J. O. Andrews,* and *Howard Babcock,* for Appellant.

The law is well settled in all jurisdictions that in such an action as this one, the fact of sexual penetration is necessary to complete the offense and must be proved beyond a reasonable doubt. 33 Cyc., p. 1486 and notes.

The court in its charge to the jury, while saying that penetration should be proven beyond a reasonable doubt, in effect told the jury that her testimony as to "intercourse" was sufficient. We call attention to the following cases holding such evidence insufficient: People v. Howard, (Cal.) 76 Pac. Rep. 1116; Wesley v. State, 65 Ga. 731; State v. Crawford, (Kan.) 18 Pac. Rep. 184; State v. Dalton, 17 S. W. Rep. 700; People v. Teuch, 60 N. E. Rep. 737; 97 S. W. Rep. 933; 113 S. W. Rep. 799; 49 Southern Rep. 178 (Miss.); 125 S. W. Rep. 21; 65 S. W. Rep. 368; Note to Smith v. State, 80 Am. Dec. 361.

We are aware that the act of sexual penetration may be shown by circumstantial evidence, but here there is no circumstantial evidence whatever to establish that fact. Prosecutrix testified only to a bare and naked conclusion. It was not modesty that prevented her from stating facts, stating just what happened, if anything; it is indeed remarkable that counsel for the state should be satisfied with such testimony to prove the case. There was no corroboration whatever of her testimony as to the act charged.

The prosecuting attorney stated in the presence and hearing of the jury: "My theory was that he (referring to defendant) was going under an assumed name," which statement was made in connection with the testimony of John S. Swanson. This statement was highly improper and prejudicial to the rights of the defendant before the jury. There was nothing in the record to justify such a statement. It is true that the court afterwards so stated and advised the jury not to regard the remark. (Record page 58). Such a remark, however, could not but have an un-

favorable influence with the jury, and such influence could not and was not fully removed by the court's admonition. Its influence on the jury is difficult to weigh and determine, but that influence was surely deterimental to defendant. It is well settled law that it is always error to permit the prosecuting attorney to state or argue facts outside of the record, and which, if offered in evidence, would be rejected. 12 Cyc. 575.

Counsel's remarks about the failure of prosecutions in Roberts county would not, if a fact, be permitted as evidence in the case, nor would the fact of the cost of bringing defendant back from California be competent evidence. Both statements would and did have a tendency to influence the jurors. It should not be required of the defendant that he show that the statements did influence the jury. It is sufficient if such statements were of such a nature that they might have influenced them, but we have in this case, by the affidavits of the jurors themselves, shown what influence these statements did have. (Record pages 172 to 177).

In this case it appears conclusively from the affidavits of the jurors that the improper argument of counsel for the state had its natural and logical effect, and that the jury, in their deliberation, did consider and estimate the expense to which Roberts county had been subjected, and that that had its effect on the verdict. Hydinger v. Ry., 101 N. W. Rep. 746 (Iowa) ; State v. Cross, 95 Iowa, 629.

A new trial will be allowed where the court has failed to check improper remarks or argument of counsel. A new trial may be granted, although improper statements have been qualified or withdrawn by counsel. The discussion of prejudicial, irrelevant matters is grounds for a new trial. 29 Cyc. pages 774-777 and note page 775, and cases cited.

Where improper remarks occur in closing argument, a new trial will be granted the more readily. Kinnaman v. Kinnaman, 72 Ind. 417; Huckel v. McCoy, 15 Pac. Rep. 870; Bert v. Dakota, 4 Dak. 13.

It will be noted that the evidence on the part of the state disclosed no child born of the prosecuting witness. The state studiously avoided introducing in evidence what would seem to be

an important fact in support of the prosecution. No child was exhibited in the court room during the trial, but the overwhelming facts are that, during each recess and intermission, the prosecutrix or her father had a child in the corridors of the court house, among the jurors (see pages 28 to 39 supra). It appears more certain than a suspicion that the prosecution desired to get before the jury by indirection that which they did not dare to introduce directly; to get this evidence to the jury without permitting the defendant to offer evidence in contradiction. We can conceive of no more unfair and unjust method and conduct on the part of any prosecution than this, and none more certain to result prejudicially to defendant's rights. We wish clearly to state to the court that we do not charge this unfairness to counsel for the state; but, on the contrary, we firmly believe it was the subtle plan of the prosecuting witness and her father and mother, carried out wholly without the knowledge of the attorneys for the prosecution.

If jurors were subjected to improper influences from the outside and by outside parties it is error for which a new trial will be granted. Prejudice will be presumed unless the contrary appears. This especially is the rule where misconduct of the jurors cannot be shown by their own affidavits. 12 Cyc. 719-720.

Sir Matthew Hale stated regarding the crime of rape, "It must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent; we should be the more cautious upon trials of offenses of this nature, wherein the court and jury may, with so much ease, be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation that they are overhastily carried to the conviction of the person accused thereof by the confident testimony, sometimes of malicious and false witnesses," which has oft been quoted and is as true as when first written.

In Reply:

We ask this court to bear in mind during the consideration of this case that the prosecutrix testified as to intercourse, as she

calls it, with but defendant. Let the court also bear in mind that the father of prosecutrix testified that he accused defendant of having ruined his girl, and then bear in mind also that during the recesses of the court, while the jury was passing through the halls, a child was with the prosecutrix mingling among the jurors, and can this court draw any other conclusion than that the jury would thereby be influenced against defendant?

We have never maintained that penetration may not be shown by circumstantial evidence, or direct evidence. We do maintain, however, that it must have been shown by one kind or the other. The case of People v. Howard, 76 Pac. 1116, is in point, and when all the facts are compared in both cases we find a very close similarity.

The question in this case is not what might have transpired at a later time which caused "trouble" for the girl, but did he at or about the time charged commit an act of sexual penetration with her. We repeat, no circumstance proves this penetration, and there is no direct evidence of the prosecutrix that such an act was committed.

"Sexual intercourse" is a legal term. For the witness to say that defendant had "intercourse" with her, is a conclusion only. It can be valuable as evidence only as it is corroborated by other evidence showing actual penetration. It would be dangerous in any case to say that the witness should be allowed to give her conclusion of whether the acts of defendant constituted "intercourse." She should be required to state what was done and let the jury determine whether that constituted "sexual intercourse" as defined by law or not.

*Royal C. Johnson,* Attorney General, *Thad L. Fuller* and *Frank R. McKenna,* for Respondent.

In the case of State v. De Marias, 130 N. W. 782, this court held that a new trial should be granted defendant in order that the church record of age might be offered in evidence upon a retrial of the action, and while such a record is hearsay in character, it is open to inspection of every one interested, under circumstances which negative any motive to falsify, and is · clearly

competent. The record involved in this case was withdrawn by Father O'Neill with permission of the court and counsel for the state and the defense. The only objection was that offered to a preliminary question as "not being the best evidence" and no objection made to the translation of the church book entry upon the ground that it was hearsay. No motion to strike out this evidence at the close of his testimony was made. Breeden v. Martens, 21 S. D. 357; State v. McLain, 49 Kan. 730, 31 Pac. 790; Hill v. Eldridge, 126 Mass. 234; W. V. v. Cin., 9 W. V. 559; Morrell v. Magin, 65 Cal. 575, 4 Pac. 580; Cent. Railroad v. Coggin, 73 Ga. 689; State v. Best, 108 N. C. 747, 12 S. E. 907, 20 Cent. Dig. 1202; State v. Miller, 80 Pac. 51.

We desire to call this court's attention to the fact that in all these citations the judges writing the opinions have used the expression "sexual intercourse" and "intercourse" without the word "sexual," as a means of conveying the same and identical meaning. In fact, this is a custom of the courts as well as text writers and publishers of digests.

It seems that the testimony of the prosecutrix in a trial for the crime of statutory rape, unless the statute requires it, need not be corroborated, and the conviction will be sustained upon the uncorroborated testimony of such prosecutrix. State v. Rash, 130 N. W. 91.

The appellant contends that there was no corroboration whatever of the testimony of Elizabeth Heumpfner as to the act charged, but the respondent earnestly insists that the testimony of the father and sister of the prosecutrix as to the conversation at the home (Tran. pp. 46-47-55, shown at Folios 14 to 17, inclusive, of this brief) will convince this court beyond all question of a doubt that the jury understood exactly the nature of the charge against the defendant and what the father meant when he told the defendant he had ruined his daughter of her virtue, to which defendant replied that he could not deny it.

Shall this court say by its decision in this case that an injustice has been done the defendant and that he should have a new trial because the prosecutrix did not see fit to tell exactly what happened and how it happened? Her modesty was a strong point

in her favor, and it would have been poor judgment for the
state to insist upon details, which the defendant could obtain on
cross-examination, if he so desired.

We take it that the remarks of counsel in order to be re-
viewed by the appellate court must be brought to the attention of
the court by proof of all the facts by affidavit and that an exception
or assignment of error of only a part of the sentence uttered is
not sufficient to bring the matter properly before the appellate
court. It will be noted that the objectionable statement is as fol-
lows: "They could not get a conviction in Roberts county out
of forty criminal cases on the calendar," and one of the objections
made by the defense was that this is the only criminal case that
has been placed on trial. What does this mean? The attorney for
the defense put into the record a portion of the argument made
by the state's attorney and so short an extract from the sentence
uttered that it is difficult to know what was intended. While the
remark might have been subject to objection and was not war-
ranted by the evidence, as a matter of common knowledge the
jury knew that this was the only criminal case tried at this term
of court, and that there appeared upon the calendar about forty
criminal cases. "Forty criminal cases upon the calendar and not
a trial." Such a remark did not relate to the guilt or innocence
of the defendant, and being immaterial, could do the defendant
no harm.

The following citations may be of interest to the court as to
the extent to which the prosecuting attorney may go in comment-
ing upon the evidence and the general conduct of the trial: 7 A.
& E. Ann. Cas. 229, note; Taylor v. M. W. of America, 7 A. & E.
Ann. Cas. 607.

We feel that no injustice has been done the defendant by re-
marks of counsel, and the rights of the prosecuting attorney rest
largely in the discretion of the trial court. State v. Kauffman,
22 S. D. 449; Holder v. State, 58 Ark. 473, 25 S. W. 279; State
v. Greenland, (Ia.) 100 N. W. 341.

If the statements of the prosecutor are mostly upon imma-
terial matters, the rule would be the same, even though the facts
were not in the record, and the appellate court would have a right

to say that such statements did not affect the verdict of the jury where they were covered in the court's charge to the jury. State v. Pirkey, 24 S. D. 533; Burdick v. Haggart, 4 Dakota, 13, 22 N. W. 539; People v. Greenwall, 115 N. Y. 540; Gallegar v. People, 71 N. E. 872; Thompson on Trials, Sec. 964; Hatchell v. State, 84 S. W. 234; Bemmingfield v. Commonwealth, 22 S. W. 1020; State v. Mach, 14 So. 141; State v. Barrington, 95 S. W. 235.

WHITING, J. Defendant was convicted of the crime of rape, alleged to have been committed upon the person of a girl under the age of consent. From the judgment of conviction and the order denying a new trial, he has appealed to this court and specifies numerous errors, most of which relate to the rulings of the court upon the admission of evidence. The rulings of the trial court upon the admission of evidence were extremely fair to defendant, and we find few assignments of error meriting consideration in this opinion.

[1] There was received in evidence the testimony of a Catholic priest as to the contents of a parish record of his church, which record was in his charge as pastor of such church and by him produced in court. He testified that such record was a record of the baptisms of the children of his parish. He was asked what else appeared on it. This was objected to as not the best evidence, objection overruled, and exception taken. He answered that it showed date of baptism, date of birth, parents of child baptised, and witnesses to the fact. He then, without objection, and without the introduction of the record in evidence, was allowed to testify that the record was in Latin, and to translate the contents of the same. It is clear that the witness' statement to the effect that the record showed date of birth was absolutely harmless to defendant. A very different question would be presented under an objection raising the question as to the competency of such a record to prove date of birth.

[2] Appellant contends that the evidence received was insufficient to warrant the jury in finding the fact of sexual penetration, which finding the trial court rightfully charged was essential to justify a verdict of guilty. The complaining witness testi-

fied that defendant had "intercourse" · with her, but did not go into detail in regard to the act of copulation;and it is the contention of appellant that the jury had no right to find that there was sexual penetration. In support of such contention, appellant cites a large number of authorities, all of which we have examined. The only one of said authorities that in the remotest degree touches upon the question before us is the case of People v. Howard, 143 Cal. 316, 76 Pac. 1116. In that case, as in case at bar, the complaining witness testified that defendant had "intercourse" with her; and, while the court, in that case, clearly held that proof of "sexual intercourse" would be sufficient to establish penetration (the court saying, "The prosecution must have proven sexual intercourse, which *includes and means sexual penetration*"), and also held that the penetration might be inferred by the jury from other facts and circumstances proven, yet the court held that, owing to the divers meanings given the word "intercourse" in accordance with its various uses, from the mere statement that defendant had "intercourse" with complaining witness at a certain time and place, the state did "not succeed in proving sexual intercourse." We think that regardless of the various meanings given by lexicographers to the word "intercourse," when, as in the case at bar, the prosecuting witness testified that, at the solicitation of defendant, she, with him, entered a building after dusk, that he took her upon his lap and kissed her, that he told her he wanted to get next to her, that she objected, stating she was unwell, and that "we hadn't ought to be doing that all the time," to which he replied, "Oh, that doesn't make any difference," that he put his coat on the floor and her on top of it, and that he had intercourse with her, the jury was fully justified in finding that the comradeship between these parties was not of a platonic nature; that their "intercourse" was not the mere exchange of mental thoughts and impulses, nor yet the spiritual communion of two souls that beat as one, but rather that such "intercourse" was physical in its nature, and one resulting from the sexual passions and impulses with which the bodies of these two persons had been imbued; in other words, that it was "sexual intercourse." We furthermore find in the record the testimony of the complaining

witness, giving an alleged statement of defendant, claimed to have been made immediately following this "intercourse," which statement, if made—and we presume the jury found it was made— shows that the defendant knew that he had fully accomplished the carnal knowledge of the person of the complaining witness, and was fearful that it might result in pregnancy.

[3] Appellant complains of certain statements made by counsel for the state in his closing argument to the jury. While the statements made were wholly unwarranted by the evidence in the case, and were such as to merit censure from this as well as the trial court, yet we do not believe they could have influenced the jury in its verdict; and the trial court, which was in a much better position than is this court to judge of the merits of this matter, having refused a new trial, this court would certainly not be justified in reversing such decision.

[4] The only other assignment meriting attention is one based upon alleged misconduct of the complaining witness and her family in exhibiting the child of the complaining witness before the members of the jury, in the corridors of the courthouse, during the recesses of the court. The affidavit of counsel for the defendant absolves the representatives of the state from being parties to this alleged wrongful conduct. Considering this matter in the light of the testimony received, and especially in the light of the theory of the defense and the testimony in support of such defense, we are unable to see how an inspection of this child could in any wise prejudice the defendant. According to the contention of the defense, the complaining witness was, at the time of the alleged rape, nothing more nor less than a common prostitute, who had surrendered her person to the embraces of numerous persons. If the jury believed the plaintiff's testimony, the view of the child could not add strength thereto; and certainly, in the light of the testimony offered by the defense, there could be no inference drawn as to the parentage of the child. Even in the light of the testimony of the complaining witness, the parentage of any child born to her, if one was so born, would be extremely doubtful. The fact of the child's existence would, at the most, only prove that some person, at some time, had sexual intercourse

with the complaining witness. It further appears, from the affidavit of counsel for the defense, that such counsel saw these exhibitions of which he is now complaining. Having seen the same, if it seemed to him that the rights of his client were being prejudiced thereby, he should have called the matter to the attention of the trial court, so that such court could have protected his client by proper orders.

[5] With the exception of the improper statements made by the state's counsel in his argument to the jury, the trial was exceedingly fair to the defendant; and, while different minds might readily have reached different conclusions in view of the evidence received, yet the jury, under proper instructions, having resolved the facts against defendant, it is not the province of this court to reverse the verdict.

The appellant has filed a reply brief herein, and we regret that we feel compelled to call attention to the fact that such reply brief is replete with accusations and insinuations of willful, unprofessional conduct and improper motives on the part of counsel representing the state, which accusations and insinuations are not justified by the record herein. We are certain that, upon reflection, counsel for the defense will agree with us that all personalities between counsel, or any charges impugning the motives of counsel, have no proper place in a brief filed in this court. We would suggest that, if the matters properly in the the record are such as to show willful, unprofessional conduct or improper motives on the part of any attorney connected with the case, it is unnecessary to call our attention to the fact in order for us to discover same; and it is entirely improper to call our attention to it, unless some claim of error is based thereon. As illustrative of the class of matter to which we object, we quote the following: "We do not wish to state why we believe the prosecuting attorneys in this case are so determined to send the defendant to state's prison, but we do know, and this court knows, that the regularly elected and acting state's attorney of Roberts county has had no part in this prosecution, and in his stead appear, as special prosecutors, two gentlemen having no connection with his office. It may be possible that their zeal in this prosecution may be somewhat affected by the interests which procured their appearance in the case."

[6] The transcript of proceedings upon trial fails to show but what counsel for state were the state's attorney and his assistant, though other parts of the record would indicate that one or both were special attorneys in the case. This court, in the absence of any showing in the court below, will presume that there was good and sufficient reasons why the state's attorney could not properly try this case, and will, furthermore, presume that the attorneys acting in his place were properly employed on behalf of the state, especially when the record shows no objection whatsoever to their appearing herein.

The judgment and order appealed from are affirmed.

McCOY and SMITH, JJ., took no part in this decision.