BROWN, Respondent, v. KEYES, Appellant.

(223 N. W. 819.)

(File No. 6007.   Opinion filed March 2, 1929.)

*McNulty, Williamson & Smith,* of Aberdeen, and *Wicks & Quinn,* of Scotland, for Appellant.

*Van Slyke & Agor,* of Aberdeen, and *H. A. Doyle,* of Yankton, for Respondent.

MISER, C. Appellant Keyes is receiver of the Corn Belt National Bank of Scotland, under the Comptroller of the Currency of the United States. Among the listed assets of said bank, at the time it was turned over to him as receiver, were three notes purporting to be signed by respondent Brown. Keyes, as receiver, brought suit in federal court against Brown upon one of these notes, which was in the sum of $1,000. Brown defended on the ground that said note was a forgery; and, upon trial, verdict and judgment were in his favor. Brown then brought this suit in state court against Keyes for damages for malicious prosecution. This appeal is from a judgment upon a verdict in Brown's favor.

The elements of "malicious prosecution" have been declared by this court to be: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff." Just v. Martin Bros. Co., 37 S. D. 470, 476, 159 N. W. 44, 46; Larsen v. Johnson, 47 S. D. 202, 204, 197 N. W. 230; 38 C. J. 386; Chapman v. Anderson, 55 App. D. C. 165, 3 F.(2d) 336; Wheeler v. Nesbit et al, 24 How. (65 U. S.) 544, 16 L. Ed. 765. That elements 1, 2, 3, and 6 exist in this case is undisputed. Appellant con-

tends, however, that elements 4 and 5 are entirely lacking. That the absence of either of these two elements is fatal to such an action has heretofore been pointed out by this court. "The want of probable cause is essential to every suit for a malicious prosecution. Both that and malice must concur. Malice, it is admitted, may be inferred by the jury from a want of probable cause, but the want of probable cause cannot be inferred from any degree of express malice." Richardson v. Dybedahl, 14 S. D. 126, 132, 84 N. W. 486, 487; Id., 17 S. D. 630, 634, 98 N. W. 164.

In Wadlington v. Coyne, 49 S. D. 563, 207 N. W. 539, this court quoted with approval from Newell on Malicious Prosecution, par. 8, as follows: "The want of probable cause is the essential ground of the action. Other grounds or essentials may be inferred from this; but this can never be inferred from anything else. It must be established by positive and express proof."

"Probable cause" has been variously defined as follows: "Probable cause, as applicable to the prosecution of a civil action, is such reason, supported by facts and circumstances, as will warrant a cautious man in the belief that his action, and the means taken in prosecuting it, are legally just and proper." Eickhoff v. Fidelity & Casualty Co., 74 Minn. 139, 76 N. W. 1030; 18 R. C. L. 35, citing 93 Am. St. Rep. 458. "The standard of conduct for beginning or continuing any proceeding, whether civil or criminal, is that of a reasonable or ordinarily prudent man placed in the same situation as the defendant." 18 R. C. L. 36. There seems to be no dispute as to where the burden of proof lies in a malicious prosecution suit. In Richardson v. Dybedahl, supra, this court said: "The burden is upon the plaintiff to show, by a fair preponderance of the evidence, both want of probable cause and that the prosecution was malicious."

As to the amount of proof of want of probable cause which is necessary to support a judgment for maliciously prosecuting a civil action, the Supreme Court of Minnesota, in Kasal v. Picha, 156 Minn. 446, 195 N. W. 280, says: "When damages are sought for the alleged malicious prosecution of a civil action, there being no interference with person or property, the absence of probable cause must be 'very palpable'—proven very clearly. Eickhoff v. Fidelity and Casualty Co., 74 Minn. 139, 76 N. W. 1030; Virtue v. Creamery Package Mfg. Co., 123 Minn. 17, 142 N. W. 930, 1136 L. R. A.

1915B, 1179, 1195. And whether the undisputed facts are sufficient to constitute probable cause is wholly a question of law. In consequence we must determine it for ourselves as if the case had been heard here. Cox v. Lauritsen, 126 Minn. 128, 147 N. W. 1093, and cases cited." In Cooley on Torts (3d Ed.) p. 351, speaking of malicious civil suits when there has been no interference with person or property, the author says: "It is held that the want of probable cause must be very palpable and that greater latitude in the doctrine of reasonable cause must be exercised in such cases than would be permissible in an action for maliciously prosecuting a criminal case."

Kolka v. Jones, 6 N. D. 461, 71 N. W. 558, 66 Am. St. Rep. 615, is a leading case on the extension of the law of malicious prosecution to civil actions wherein the defendant was not deprived of his liberty or property, and was not injured in his business. It was followed in so holding by this court in Teesdale v. Liebschwager, 42 S. D. 323, 174 N. W. 620. A careful reading of Kolka v. Jones leaves no doubt that it was the purpose of that decision to declare that legal redress might be had against "the malignant persecutor and harasser of a citizen, who, by his abuse of legal forms, causes heavy damage to such citizen, in property, reputation, and business prospects, by the unfounded suit, which he who institutes it knows full well he cannot maintain"; but "that the honest claimant should not be frightened from invoking the aid of the law by the statutory threat of a heavy bill of costs against him in case of defeat." Although some courts have criticized the rule which requires the absence of probable cause to be very palpable, as stated in Kasal v. Picha, supra, we find no case where the allowance of damages in such cases has received judicial approval where absence of probable cause has not been very clearly proven. The rule is well stated in Eickhoff v. Fidelity & Casualty Co., supra, where, after using the language hereinbefore quoted from Cooley on Torts (3d Ed), the court proceeds: "Before a party can justly be held liable for maliciously prosecuting a civil action, where there was no intereference with the person or property of the defendant, want of probable cause must be very clearly proven. Bigelow, Torts, 78; Newell, Mal. Pros. § 26. This rule is sustained by principles of justice and public policy. To compel a party who brings a civil action and fails to maintain it to pay the

costs is, as a rule, all that a practical administration of justice requires, and is usually sufficient to make him cautious about bringing such suits. Any other rule would make litigation interminable. Cooley, Torts, 207."

■ ·The province of the court and jury as to the question of probable cause in actions for malicious prosecution has recently been succinctly stated by the Minnesota court as follows: "What facts constitute probable cause is for the court; but what the facts are, if there is a dispute about them, is for the jury." Reiherzer v. Bresky, 170 Minn. 266, 212 N. W. 456. In Cox v. Lauritsen, supra, it is said: "Whether the undisputed facts are sufficient to constitute probable cause * * * is a. question exclusively for the courts, and, upon appeal, will be weighed in this court as if the case had been heard here." See, also, 18 R. C. L. 58; 38 C. J. 509.

■ ■ It therefore becomes the duty of this court to determine from the evidence adduced whether appellant Keyes, at the time he instituted the civil suit in federal court, had probable cause for so doing; for "the existence of probable cause depends upon the facts within the knowledge of the defendant at the time the prosecution was instituted and not upon subsequent events nor upon matters then unknown to him." Lewis v. Goldman, 241 Mass. 577, 578, 136 N. E. 67, 68 (24 A. L. R. 260). If the judgment of the lower court is to be affirmed, the evidence must show that respondent has established, by positive and express proof, the want of probable cause for instituting the action in federal court at the time it was instituted. Stone v. Crocker, 24 Pick. (Mass.) 81, 84. The evidence before us is conflicting; but, resolving every disputed question of fact in favor of respondent, the evidence discloses the following facts to be clearly established:

For 17 years prior to taking charge of the Cornbelt National Bank of Scotland, appellant had been with the Comptroller of the Currency as a bank receiver. This bank was closed by one Smiley, who took charge of it on January 21, 1921, for the Comptroller and turned it over to appellant as receiver in May, 1921. At the time of the trial, appellant was receiver for the Scotland bank and three other national banks, and Smiley, who had been a bank examiner for three years, was president of a Minneapolis bank. When Smiley took charge of the Scotland bank, he found, among several other notes of respondent Brown, the note on which appel-

lant later sued Brown. Smiley listed this note as an asset, handled it in the same manner as any other note, and turned it over to appellant as one of the bank's assets. Smiley found other paper in the bank that was claimed to be forged, but as to whether such paper or the note sued on was forged or not he did not know. While he had charge of the bank, Brown made no such claim to him. Brown testified that, on the day when Smiley turned the Scotland bank over to appellant Keyes, Smiley introduced Brown to Keyes in the bank; Keyes showed to Brown, and they discussed, two other notes; and when the note in question was shown to him, he said, "That ain't mine." In this he is contradicted by Smiley and Keyes, both of whom testify that, on that occasion, he said that he did not owe it; that he had paid it. There is no evidence that Brown on any other occasion stated to Keyes that the note was forged or that Keyes was so advised by any one else.

Schramm, who was clerk under Receiver Keyes for five months in 1921, and who, for three years prior to the trial, was himself a receiver of national banks under the Comptroller of the Currency, testified that he showed Brown this note and discussed it with him several times, and that Brown did not claim to him that it was a forgery.

Schramm was succeeded as clerk by Schennum, who had had 18 years' experience in banks. At the time of the trial, he was receiver of two national banks. Brown talked to him twice about this note, but did not tell him it was a forgery. Brown admits that he told neither Schramm nor Schennum that the note was forged, although he denies that he told them that he had paid the note in a big settlement with Wilson, the former cashier. On October 25, 1922, Schennum heard Keyes dictate a letter, the office copy of which was received in evidence, in which Keyes stated that a thorough search of the records disclosed no evidence that the note had been paid, and that unless Brown could show some conclusive evidence of payment, he would have to institute legal action against Brown. The following morning, Brown showed Schennum . the letter on the street, stated that they knew he did not owe the note, and if they made any trouble about it he was going to fight back. Schennum told Brown that there was nothing in the bank to show that he had paid it, that Keyes had been able to find no evidence of payment, and that Brown should see Keyes about it. Brown did

not see Keyes nor answer the letter. On November 29, 1922, Schennum told Keyes about his conversation with Brown on October 26th; and Keyes at once sent the note to counsel for the purpose of bringing suit. Suit was begun December 11, 1922. According to the testimony of Keyes, the first intimation he had of Brown's claim that the note was forged was when Brown filed his answer. We have not stated the conflicting evidence of malice, but have assumed, for the purpose of this opinion, that malice has been proven.

The vital question herein is not whether the note was forged, nor whether Brown claimed to Keyes that the note was forged. It is not the law that any purported maker of negotiable paper who successfully interposes the defense of forgery may thereafter recover damages for malicious prosecution against the holder who brings suit on the note. Keyes could not know of his own knowledge that the note was forged. This despite his angry retort the day *after* the trial of the original action when charged by Brown with having tried to "gyp" him. The vital question is whether the appearance of this note was such that Keyes was warranted in believing that he should sue on it. Keyes owed a duty to Brown not to hale him into court without probable cause. He owed no less a duty to the depositors of that insolvent bank to collect its assets for their benefit. Should Keyes have brought the suit to collect, or should he have reported it to the Comptroller of the Currency as worthless?

What was the appearance of this note? The only direct evidence as to that is the testimony of Keyes, who said that, when compared with admitted signatures of Brown, he thought there was a slight variation, but that, despite his 19 years' experience as clerk and assistant and receiver, he could not say whether the note was forged. There was forged paper in the bank. Keyes was not permitted to testify that paper which he suspected as forged was afterward acknowledged and paid by the makers thereof, nor that he had been able to prove as genuine notes that the makers claimed to be forgeries. The note in question was not introduced in evidence; although the specific allegation in respondents' complaint that it was forged was generally denied in appellant's answer. The testimony of Smiley, Schramm, and Schennum, all experienced bank men who had handled this note and discussed it with Brown,

negatives the inference that the forgery, if any, was palpable. When sued on the note, Brown paid to his attorney $356.10 as follows: $300 for attorney's fees, $50 for a handwriting expert, and $6.10 for incidental expense. That trial took one court day. Conceding that the note was forged, the testimony of Keyes that the variation was not sufficient for him to say on his own responsibility that the note was a forgery is not only uncontradicted, but is supported by every reasonable inference from the evidence as a whole.

At the time of appellant's motion for a directed verdict at the conclusion of the evidence, the trial court was confronted—and this court is now confronted—with a question, not of fact, but of law. This question was whether an absence of probable cause had been proven by respondent. Appellant's motion for a directed verdict in his favor should have been granted. Every conflict in the evidence may be resolved in favor of respondent. It may even be assumed that there is evidence of malice sufficient to have gone to the jury on that element of the tort; yet the proof of absence of probable cause—that essential fourth element of the tort—which it was respondent's burden to produce, was not that "positive and express" proof, that "very palpable" proof, that "very clear" proof which, in the light of all the authorities hereinbefore cited, the law requires of respondent herein.

The judgment must be and is reversed, and the cause remanded, with instructions to enter judgment for appellant.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur. CAMPBELL, J., disqualified and not sitting.

BROWN, J. (dissenting). The opinion in this case states that all the elements of a cause of action for malicious prosecution are established except these two: First, malice; second, want of probable cause.

The opinion correctly states that malice may be inferred by the jury from want of probable cause, but that want of probable cause cannot be inferred from any degree of express malice. The crucial question in the case, therefore, is this: Has plaintiff shown want of probable cause?

While it is true that where facts are undisputed, whether or not they constitute probable cause is a question of law for the court to decide, it is no less true that: "Where there is a conflict in the

evidence bearing on the facts relied on to constitute probable cause, it is a question for the jury to determine whether these facts are sufficiently established, *and this is so no matter how great the preponderance of the evidence is in favor of one party or the other."* 38 C. J. 505. In this case, the facts are in dispute. By their verdict the jury have found the facts in favor of plaintiff, and the evidence being conflicting, this court has no right to set itself in place of the jury, and by an attempted weighing of the testimony of different witnesses, undertake to say which witnesses should be believed and which not, and on which side the evidence preponderates.

Plaintiff testified that the first time defendant showed him this note, he told him that it was a forgery and handed it back to him there at the window in the bank. He further testified that on the day after the trial of the action on the note he was in a restaurant in Scotland, and defendant came in and came over to the chair where plaintiff sat at a table, and after some remarks about the lawsuit Keyes said angrily to him: "I knew that was a forged note. If you had gone to a notary public and spent 25c and made an affidavit, it would have satisfied me, but you had such a great friend in Mr. Wilson I wanted to get you into court and make you spend some of your money, and have some fun with you."

George Strong, a commercial traveler who was sitting at the same table with plaintiff on this occasion, testified that Keyes came over to the table where he was sitting with plaintiff and said: "Henry, if you had known enough to go before a notary public and spend 25c and had sworn to an affidavit that that was a forged note, it would have satisfied us because we knew it was a forgery, and you did not know enough to do that, but you being a very good friend of Mr. Wilson's, we thought we would bring you into court and have a little fun with you and spend a little of your money defending yourself." That Keyes appeared somewhat provoked and angry at the time. If this testimony does not show want of probable cause for instituting a lawsuit, I cannot imagine what kind or quantity of evidence would be sufficient. These statements of defendant not only show a palpable case of want of probable cause, but also show that defendant was actuated by express malice. Defendant's own version of this conversation in the restaurant, while varying somewhat from that of plaintiff and Strong, itself warrants the inference that he did not commence the action in good

faith, but rather in retaliation or revenge because he thought that plaintiff refrained from making an affidavit that the note was a forgery out of a desire to shield his friend, Wilson, ex-cashier of the bank, from prosecution for forgery. Defendant testified that, in that conversation in the restaurant, he said to plaintiff: "For a 25-cent notary fee you could have saved yourself all that trouble and expense, and I suspicioned it was a forgery from the first, but you would never say it was, and I know very well you did it because you wanted to protect your friend Wilson against the charge of forgery."

The majority opinion says: "The evidence before us is conflicting; but resolving every disputed question of fact in favor of respondent, the evidence discloses the following facts to be clearly established." It then proceeds to marshal the evidence, not in favor of respondent, but of appellant, omitting any mention of the testimony hereinbefore quoted in favor of respondent, and concludes that there was no proof of want of probable cause, and that appellant's motion for a directed verdict in his favor should therefore have been granted.

In the majority opinion it is said that Kolka v. Jones, 6 N. D. 461, 71 N. W. 558, 66 Am. St. Rep. 615, is a "leading case" on the question of probable cause in actions for malicious prosecution. It is remarkable that it should lead in such divergent directions and to destinations so widely apart as it seems to do in the case at bar. Let us look at some of the signposts (by way of quotation) along the way in which it leads: "Probable cause is, on undisputed facts, a question of law. Of course, it is necessary, not only that there should be ground for believing that there was a cause of action, but also that the person bringing the action should have so believed in good faith." In the present case, on the testimony of plaintiff and Strong, the defendant did not believe in good faith that he had a cause of action, but said that he knew that he had not, and that he brought the action, not with the expectation of recovering on the note or of establishing its validity or invalidity, but for the purpose of making Brown spend some of his money in defending the action.

Again we quote from Kolka v. Jones: "In our discussion of the facts, we shall state those which uphold the plaintiff's case; for, the jury having rendered a verdict sustaining his claim for

damages, we must assume that every controverted issue was determined in his favor, so far as it is necessary to so assume in support of such verdict." See, also, Pierce v. Lyons, 42 S. D. 543, 176 N. W. 521. In the present case, the majority take the opposite course. They state the testimony which upholds *the defendant's* case, which testimony the jury's verdict shows they did not believe, and the majority evidently proceed upon the assumption that, while the jury has determined every controverted issue in favor of the plaintiff, it ought to have accepted as true and conclusive the testimony of defendant's witnesses rather than that of plaintiff's witnesses. This is diametrically opposed to the law as laid down in Kolka v. Jones, and as has been held and reiterated in scores of cases in this court.

The majority opinion quotes expressions to the effect that want of probable cause must be "palpable" and "very clearly proven," and concludes with the expression that respondent has not produced the "very palpable" and "very clear" proof which the law requires of him. Again turning to Kolka v. Jones, we quote: "To establish want of probable cause is to prove a negative, and it is elementary that to prove a negative requires only slight evidence. See Newell, Mal. Pros. page 282, § 17." But even if very palpable and very clear proof is required, it is to the jury, and not to this court, that the proof must be very palpable and very clear. In criminal cases the proof is not merely required to be very palpable and very clear, but it must establish the state's case beyond a reasonable doubt. Yet we uniformly hold that if there is evidence tending to support the state's case it is for the jury, not for this court, to say whether or not it is proved beyond a reasonable doubt. State v. Stumbaugh, 28 S. D. 50, 132 N. W. 666; State v. Leavitt, 28 S. D. 216, 133 N. W. 294; State v. Bailly, 29 S. D. 588, 137 N. W. 352; State v. Julius, 29 S. D. 638, 137 N. W. 590. The same rule applies, and ought to apply, to civil cases. "The fact that the appellate court would have reached a different conclusion, had the judges thereof sat on the jury, or that they are of the opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence." 4 C. J. 859. Several pages of citations are given in support of the law as thus stated, among which citations are a number from this court.

That defendant in the case at bar believed he had probable cause for instituting the suit on the note is incredible, if the testimony of plaintiff and Strong is true, and in view of the verdict of the jury, under all the authorities, this court is bound to assume that such testimony is true.

Wilson had been cashier of the bank. Keyes seems to have wanted to get Brown committed by affidavit to the statement that Wilson forged the note, and as Brown did not readily do this, Keyes sued him on the note he said he knew was forged in order to make him spend some of his money in defending himself. In the majority opinion, it is said that Keyes sent Brown a letter saying that the records of the bank disclosed no evidence that this note had been paid, and unless Brown could show conclusive evidence of payment he would have to institute suit on the note; that Brown showed this letter to Schennum, a clerk of Keyes, and told him he did not owe the note, and if they made him any trouble he would fight back; that Schennum told Brown that he would have to see Keyes about it; and that Brown did not see Keyes nor answer the letter. From the statement that Brown did not see Keyes nor answer the letter it may fairly be inferred that the majority consider that Brown invited the litigation and expense he was made to undergo, but the majority opinion does not state fully the facts on this point.

The evidence is undisputed that when Brown was told by Schennum that he would have to see Keyes, the latter was out of town, and suit was commenced before he returned.

One more quotation from the leading case of Kolka v. Jones seems peculiarly apposite to the present case: "The malicious prostitution of legal remedies to subserve unworthy personal ends is not only an injury to the victim of the particular persecution, but also to society at large, if it is suffered to go unwhipped of justice. If the law will not punish such conduct, public confidence in the merits of our system of jurisprudence must inevitably be shaken, and the courts themselves will seem to have forsaken their high function as protectors and vindicators of invaded rights, and to have become, instead, the accomplices of evil men."

The judgment and order of the trial court ought to be affirmed.