56 So.2d 786

## OSBORN v. STATE.

### 6 Div. 376.

Court of Appeals of Alabama.
Jan. 8, 1952.

Rehearing Denied Feb. 5, 1952.

· Johnson & Randall, Oneonta, for appellant.

Si Garrett, Atty. Gen., M. Roland Nachman, Jr., Asst. Atty. Gen., and Wm. H. Sanders, Montgomery, of counsel, for the State.

HARWOOD, Judge.

This appellant has been found guilty by a jury of carnally knowing, or abusing in attempting to carnally know, a girl over the age of twelve years and under the age of sixteen years, an offense denounced by Section 399, Title 14, Code of Alabama 1940.

Consent on the part of the offended girl is of course not an element of this offense. Bedsole v. State, 28 Ala.App. 27, 177 So. 308.

The prosecutrix in this case was fifteen years old at the time of the alleged offense. She appears to have been a backward witness, and upon her first appearance on the witness stand she immediately became upset, began weeping, and was excused. Later she was recalled to the witness box.

The evidence presented by the State tended to show that the prosecutrix and the appellant, together with another couple first got together in Birmingham. They drove to a lake near Birmingham and went swimming. Afterwards they rode to a secluded spot in Blount County.

Here the prosecutrix and appellant got out of the car and walked a short distance away, the other couple remaining in the car.

As to the prosecutrix' account of what occurred thereafter we quote the following excerpt from her direct testimony:

"The Court: Go ahead and answer. A. Osborn and I got out of the car and we went—I don't know how far from the car—and he said for me to sit down. I told him I didn't want to. He said for me to sit down again. I sat down. He sat down. When he sat down I got up and he pulled me back down again, and he tried—

"Mr. Johnson: We object to what he tried, and move to exclude that.

"Q. Just tell what he did.

"The Court: She hasn't said anything.

"Mr. Randall: She said he tried.

"The Court: Overrule; Just say what happened. Let's don't get her excited again.

"Mr. Randall: We except.

"The Court: Go ahead.

"A. I can't put it in words.

"The Court: Just tell what he did. Don't say what he tried to do. What he actually did or said to you, if anything. A. He said for me to pull my pants off, so I got up and started pulling them off, and started running. I got as far as the car and he throwed me down. He took me back out to about where we was the first time.

"Q. All right. Go ahead. Well, did he have sexual intercourse?

"Mr. Randall: Wait a minute. We object.

"The Court: Just go ahead and tell what happened.

"The Witness: I can't.

"The Court: Well, you have to tell that. Just tell what, if anything happened out there.

"Q. Just go ahead and tell it, Ina Mae. A. I don't know how to put it in words.

"Q. Just state whether or not he had sexual intercourse with you?

"Mr. Johnson: We object to that, your Honor.

"The Court: Of course, I don't know whether she knows what that is or not.

"The Witness: We did have a inter-course.

"Mr. Waid: All right. You may ask her.

"Mr. Johnson: We move to exclude that statement.

"The Court: Overruled.

"Mr. Johnson: We save it."

It is inferable from the record that the prosecutrix later, and around 8:00 o'clock that evening, contacted the Sheriff of Blount County. This official took her to the office of Dr. E. W. Gordon.

Dr. Gordon testified that he saw the prosecutrix at 10:20 on the night of the alleged offense. Actually, the doctor's physical findings were negative, that is her genitals showed no injuries and no spermatozoa were found. Dr. Gordon testified that from his examination he could not say that the girl had had sexual intercourse, nor could he say that she had not. The girl was "very, very nervous," and he found small scratches on the left forearm and right knee, and small bruises on the upper arm.

The appellant John Osborn, as a witness in his own behalf, testified he had known the prosecutrix about two months. He is married, and had told the prosecutrix that his name was Jimmy Allen.

The appellant's testimony does not contradict that of the prosecutrix, in any aspect except that he strenuously denied any improper conduct toward the prosecutrix. His version in this regard was that after the car was parked in Blount County the other couple had stated they wanted to be alone for awhile. He and the prosecutrix thereupon left the car and walked over in the woods. Here they sat down and talked for about fifteen minutes and then returned to the car. Appellant strenuously contended that he had not molested the girl in any manner whatsoever during the entire time he was with her.

Appellant's counsel argues, among other things, that the court erred in refusing appellant's written request for the affirmative charge, and in denying his motion for a new trial because the verdict was against the great weight of the evidence.

We do not think this argument meritorious. The testimony of the prosecutrix, if believed under the required rule, was amply sufficient to establish an actual act of carnal knowledge. The appellant's testimony in direct contradiction that such act occurred merely presented a question of fact solely within the province of the jury to resolve. While it is true that Dr. Gordon's testimony was to the effect that he could not say that the prosecutrix had been car-

nally known, he was equally candid in saying that he also could not say that she had not been carnally known. The persuasiveness of this expert testimony is thus completely negative, and so far as we can see is of no effect in determining the factual issue involved.

■ It is also to be noted that the prosecutrix testified only that the appellant had had "a intercourse" with her.

The Supreme Court of California in People v. Howard, 143 Cal. 316, 76 P. 1116, 1117, held that the State had failed to establish its case, where in a statutory rape prosecution the prosecutrix had merely testified that she and appellant had had intercourse. The California court wrote: "The district attorney, under defendant's objection, was permitted to ask leading questions of the prosecuting witness, but by such questions did not succeed in proving sexual intercourse. He asked the following questions: 'Q. Did the defendant have intercourse with you during the month of August in the tent?' The witness answered: 'Yes, sir.' The witness, in answer to other questions, testified: 'That took place on this side of the stove. There was a cot there. There is where it took place.' This is all the evidence in the record as to the act claimed to constitute the crime of rape, except the evidence of the defendant, who testified that he never at any time had sexual intercourse with the prosecuting witness. 'Intercourse' means 'a commingling; intimate connections or dealings between persons or nations, as in common affairs and civilities, in correspondence or trade; communication; commerce; especially interchange of thought and feeling; association; communion.' Webster's Dict. There was testimony to the effect that the prosecuting witness was often in the defendant's tent; that she sometimes sat on his lap and read to him. This may have been the intercourse referred to in answer to the leading question of the district attorney."

We cannot accept the conclusions of the California court. The meaning to be attached to words must be considered in the background in which words are used, and

the ordinary construction accorded them. It would be indeed torturing common sense to conclude that the prosecutrix in the present case, in stating that appellant had "a intercourse" with her, meant that she and appellant had merely indulged in common civilities, a correspondence, or an interchange of thought and feeling. Only by closing their minds to the ordinary meaning of the word "intercourse," when used in the frame and setting of the prosecutrix' testimony could the jury have attached any rational meaning to prosecutrix' statement other than sexual intercourse had taken place on the occasion in question.

Further, from a lexicographical approach the conclusion of the California court is unsound for we find that one of the alternative definitions given for the word "intercourse" in Webster's Unabridged Dictionary, 2nd.Ed., is "3. Sexual connection; coition; as illicit intercourse."

We have not found an Alabama case dealing with the sufficiency of the testimony now under consideration, i. e., the meaning of the word "intercourse" by a prosecutrix in a prosecution for a sexual offense. However, we do find that the Supreme Court of Appeals of Virginia, in King v. Commonwealth, 165 Va. 843, 183 S.E. 187, and the Supreme Court of South Dakota in State v. Bailly, 29 S.D. 588, 137 N.W. 352, have considered this point and have in effect held that the sense in which the word "intercourse" was used by the prosecuting witness in each case meant sexual intercourse.

■ The rulings of the court permitting the State to show, over defendant's objection, that he was made known to the prosecutrix under a fictitious name, and on cross-examination of the appellant to show that he was a married man were proper. Way v. State, 155 Ala. 52, 46 So. 273; Washington v. State, 23 Ala.App. 253, 123 So. 277; Maryland Casualty Co. v. McCallum, 200 Ala. 154, 75 So. 902.

Appellant's requested charges 1, 2 and 4, being affirmative in nature, were properly refused under the evidence.

Charge 3 was refused without error. It is not predicated upon the evidence, and is elliptical.

Upon examination of this entire record we are of the opinion that it is free of error probably injurious to the substantial rights of this appellant. This cause is therefore ordered affirmed.

Affirmed.