38 So.2d 593

## HAYGOOD v. STATE.

### 6 Div. 762.

Supreme Court of Alabama.

Jan. 20, 1949.

Rehearing Denied Feb. 17, 1949.

Josh Mullins, Jr., of Birmingham, for appellant.

**6**

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

STAKELY, Justice.

The appellant Perry Lee Haygood, alias Kemp Perry, was indicted, tried and convicted of murder in the first degree. His punishment was fixed at death by electrocution. This appeal comes to this court under the automatic appeal act. General Acts of 1943, p. 217 et seq., Code 1940, Tit. 15, § 382(1) et seq.

Jack Sims, witness for the state, by his own admission was an accomplice of appellant and like appellant has also been indicted for the murder of W. J. Trotter, deceased. According to his testimony, on Monday, February 2, 1948, at about 7.15 to 7.20 A.M. by prearrangement with the appellant, he met appellant at the corner of 10th Avenue and 17th Street in the City of Birmingham. They then proceeded to the store of W. J. Trotter at the corner of 18th Street and 10th Avenue in the City of Birmingham. The store was a small delicatessen store. After ordering two chocolate milks, a box of crackers and two cans of sardines, they consumed part of this food and then according to the testimony of Jack Sims, appellant stated to the deceased that this was a stick-up and thereupon shot him through the head and in the body causing his death. Jack Sims thereupon ran out of the store, leaving appellant in the store.

The balance of the testimony introduced by the state tended to show the following. According to the wife of deceased, deceased left his home about 20 minutes after seven A.M. to go to his delicatessen store, which was two or three blocks from his home. He took with him some money which represented the proceeds of sales at the store which he had kept the preceding night under a rug in the house. His wife learned of his death about 20 minutes after eight A.M. on the same morning.

Appellant, another man and Trotter were seen in the store of Trotter by McKinley Burnett who passed by on the sidewalk between 7:30 to 8:00 A.M. on his way to school. Appellant with another man was also seen in the vicinity of the store at 7:00 to 7:10 A.M. by A. R. Peeler, store manager of Hill Grocery Co. According to experts of the Identification Bureau of the Police Department of the City of Birmingham finger prints were found on the box of crackers which was on the counter of the store at the time the officers arrived and the contents of which had been partly consumed. These finger prints matched the finger prints of appellant. The officers also found on the counter two milk bottles with chocolate milk in them, about half full and also one can of sardines. Another can of sardines was in the can opener on the wall. Three bullets were discovered in the store or in the body of the deceased, all of which were of a size suitable to a pistol described as .38 special. A .38 special pistol was introduced in evidence and the appellant admitted that it was his own pistol. The proof showed that on the day of the homicide or the day after the appellant pawned a .38 special pistol. The police redeemed it for $25 and this is the pistol which was

introduced in evidence. No money was found by the police on the body of deceased. Only a one dollar bill in a record book and a few cents contained in a jar were found in the store. $69 and a few cents were found on the person of appellant when he was arrested. On the morning of February 2, 1948, appellant went to a clothing store nearby in the City of Birmingham and purchased a suit for $77.43. He made a down payment of $50. This amount was paid in bills and in nickels, dimes and quarters to the extent of $8.

The appellant testified that, unaccompanied by any one, he went to the store of Trotter on the morning in question at about 7:10 to 7:15 and purchased some milk, crackers and sardines. He left the bottle of milk there but was not sure whether he left half a box of crackers and half a box of sardines. According to his testimony he was in Trotter's store five or six minutes. He denied, however, that he shot the deceased or took any money from the person or store of the deceased and according to his testimony he procured the money which he had in his possession and with which he made the cash payment for his suit by gambling with some of his friends and acquaintances. He testified that he went to the clothing store kind of early from Trotter's store, a distance of six or seven blocks. He denied that he had any agreement with Jack Sims for any kind of a deal and testified that he was in another part of the City of Birmingham at the time the homicide was committed.

Reversal is sought on a number of grounds which will be considered in the order in which they have been presented to us.

I. It is earnestly insisted that the court was in error when the court made a preliminary examination of Jack Sims, witness for the state. The alleged error lies in the manner in which the witness was questioned by the court. We set out the pertinent part of the transcript as follows:

"Q. What is your name? A. Jack C. Sims.

"Q. Jack, do you want to testify in this case? A. Yes sir.

"Q. You want to tell the truth about it? A. Yes sir.

"Q. You understand that any testimony you might give of course might be used against you in your own case? You understand that? A. Yes sir.

"Q. Do you want to tell the truth about it and tell it all, is that what you want to do? A. Yes sir. * * *."

There was no objection or exception to the action of the court, but it is contended that such objection or exception is not necessary for review here because of the provisions of the automatic appeal act which reads as follows:

"In all cases of automatic appeals the appellate court may consider, at its discretion, any testimony that was seriously prejudicial to the rights of the appellant, and may reverse thereon even though no lawful objection or exception was made thereto." —§ 382(10), Title 15, Code of 1940, Pocket Part.

The purpose of objection and exception is to challenge the correctness of the action of the court so that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for review, if necessary, by the appellate tribunal. Without such objection and exception, the trial court ordinarily has the right to assume that its action is acquiesced in and free from error. 3 C.J., § 801, pages 894, 895; 4 C.J.S., Appeal and Error, § 323. So where the question has been presented we have been careful to see if the legislature intended by the automatic appeal act to take the particular ruling from out the general rule. We have held that the act does not embrace the court's oral charge when no exception is taken thereto. Easley v. State, 246 Ala. 359, 20 So.2d 519; Reedy v. State, 246 Ala. 363, 20 So.2d 528; James v. State, 246 Ala. 617, 21 So.2d 847.

We do not think that the words employed by the court should be construed

as assuming the guilt of the defendant or as indicating that the witness would tell the truth, as argued by the appellant. Rather they show a purpose on the part of the court to advise Jack Sims of his constitutional rights and to lay the groundwork for possible leniency to him on the charge against him. Odiorne v. State, 249 Ala. 375, 31 So.2d 132; Long v. State, 86 Ala. 36, 5 So. 443; United States v. Ford, 99 U.S. 594, 25 L.Ed. 399. What the court said amounted in effect to administering an oath to the witness. We say all this because even if we assume that the words of the court taken together with the replies of the defendant constitute evidence (see 62 C.J. p. 830), still under the discretion given us by the act we do not think that the question and answers were prejudicial to the rights of the defendant and call for any further comment.

II. It is argued that the court was in error in allowing the witness McKinley Burnett to testify. The theory is that on account of his age—11 years of age—the witness did not understand the nature and sanctity of an oath. We set out the pertinent part of the record:

"Q. (By the Court) How old are you? A. Eleven.

"Q. Do you go to school? A. Yes sir.

"Q. What grade are you in? A. 6–A

"Q. What school do you go to? A. Lincoln.

"Q. Do you got to Sunday school and church? A. Yes sir.

"Q. Will a good boy tell the truth? A. Yes sir. * * *."

■■ We find no merit in the contention. Whether a child is of sufficient intelligence to understand the nature and sanctity of an oath is a question largely within the discretion of the court. Carter v. State, 205 Ala. 460, 88 So. 571; Puckett v. State, 213 Ala. 383, 105 So. 211; Petty v. State, 224 Ala. 451, 140 So. 585. There is nothing to show abuse of such discretion. It may be added that the testimony of the witness, after he was pronounced qualified

by the court, shows him to be intelligent and of an understanding entirely sufficient to qualify him as a witness.

■ III. It is claimed that the court was in error in refusing to allow defendant's counsel to argue to the jury that the state did not produce a ballistic expert to show that the bullets which killed Trotter came out of the gun which was pawned by the appellant. In excluding this argument the court stated that counsel had a right to argue the evidence and the inferences to be drawn from the evidence. It is enough to say that there was nothing to show that a ballistic examination or test had been made. And so there was no expert acquainted with the facts whom the state failed to produce. There was no error in this regard.

■ IV. There was no error in refusing charges 10, 12, 16 and 19. These charges were adequately covered by the oral charge. There was no error in refusing charge 31. Such a charge has been held good when all the evidence is circumstantial. Pickens v. State, 115 Ala. 42, 22 So. 551; McDowell v. State, 238 Ala. 101, 189 So. 183; Suttle v. State, 19 Ala. App. 198, 96 So. 90, 91. It is sufficient to to say that all the evidence in the present case is not circumstantial. Parsons v. State, 251 Ala. 467, 38 So.2d 209. Ex parte State ex rel. Attorney General (Smith v. State), post p. 149, 39 So.2d 669.

■ There was no error in refusing charge 33. As pointed out in Pickens v. State, 115 Ala. 42, 22 So. 551, the charge would be proper if the evidence was circumstantial pointing to the defendant and to some other person not acting in concert with him. See Spraggins v. State, 139 Ala. 93, 35 So. 1000. However, tendencies of the evidence for the state in the case at bar were that two persons acting in concert were present at the time of the killing. Even if it be conceded—which is only done for the sake of argument—that Jack Sims fired the shot, this would not raise a reasonable doubt of the guilt of defendant. Both were principals, present, aiding and abetting in the commission of the offense. As to these two a probability

that one and not the other did the shooting, creates no reasonable doubt of their equal guilt.

 There was no error in refusing charges 37, 38, 55 and 56. All of these charges are either covered by the oral charge, are confusing, place undue emphasis on certain phases of the evidence or are grounded on the assumption that there could be no conviction without the testimony of the accomplice Jack Sims. This overlooks the state's case which could be based solely on evidence apart from the testimony of Jack Sims.

 There was no error in refusing charges 40 and 41. They are abstract, ambiguous and confusing.

The judgment of the lower court must be affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON, and SIMPSON, JJ., concur.