186 So.2d 108

James Lewis HAMILTON

v.

STATE.

6 Div. 925.

Court of Appeals of Alabama.

Dec. 21, 1965.

Rehearing Denied March 8, 1966.

<hr/>

Wm. W. Conwell, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and John G. Bookout, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, James Lewis Hamilton, was tried in the Circuit Court of Jefferson County, Bessemer Division, under an indictment containing two counts. Count One charges assault with intent to murder. Count Two charges assault with intent to ravish. The jury returned a verdict of guilty as charged in Count Two. Appellant was adjudged guilty by the court of the offense of assault with intent to ravish and sentenced to seven years in the State penitentiary.

The alleged assaulted person is Barbara Sue Allen, who at the time was seventeen years of age. The testimony of the prosecutrix is substantially as hereinafter summarized.

On the night of the alleged assault the prosecutrix had a blind date with the de-fendant. The date was arranged by one Pat Reeves, whom the prosecutrix had known for about a year, and who had been married to one Walter Reeves for only a few days. The defendant was Walter Reeves' "boss." The defendant, Pat Reeves, and Walter Reeves picked up the prosecutrix at her home in Birmingham at approximately 8:00 P.M., and the two couples went from there in the defendant's automobile to a "night spot" called Watson's, where they remained for two or three hours. The prosecutrix was not served any alcoholic beverages at Watson's and she drank not more than half a glass of beer from the defendant's glass while there. When the two couples left Watson's they drove to the Graymont Cafe, which is located on Graymont Avenue in Birmingham. The prosecutrix had something to eat at this cafe but did not drink any alcoholic beverages. The defendant and Walter Reeves "had some beer" at the cafe.

Walter Reeves drove the defendant's automobile when the two couples left the Graymont Cafe. His wife, Pat, sat in the front seat with him and the defendant and prosecutrix sat in the back seat. The defendant kissed the prosecutrix as they were driving along and then complained about the way she kissed, saying that she "kissed like a high school kid." When she refused to kiss him again, the defendant put his hand between the upper part of her thighs. She tried unsuccessfully to push his hand away and then slapped his hand, whereupon the defendant hit her with his fist and said something like "no broad puts me down." He also stated that he was going to take her to a motel. As she tried to repulse his advances he hit her with his fists several times and "halfway ripped off" the shorts she was wearing. Each time the defendant hit her she yelled to Walter Reeves, asking him to stop the car, that she had to go to a restroom. Walter stopped the car at the Orbit Service Station, which is located on the "Bessemer Super Highway."

The prosecutrix got out of the car and went in the ladies' restroom at the Orbit

Service Station. After about four minutes she left the restroom and tried to run away, but "couldn't because there was a fence about four feet high that blocked the way." She then locked herself in the men's restroom. After a few minutes the defendant opened the door to the men's restroom with a key, entered the room with the prosecutrix, and locked the door behind him. The prosecutrix asked him not to hit her again, but he struck her in the face and neck with his fist and she fell to the floor of the restroom. Before she fell the defendant said, "To hell with the motel, let's do it here." While she was lying on the floor the defendant ripped out the straddle or crotch of her shorts so that the shorts hung "like a short skirt." He also said something to the effect that he was going to have sexual intercourse with her. The prosecutrix stated that she was "fighting all I could" and "tried to talk him out of it." She told him, "Walter and Pat are waiting for us, we've got to take them home," and "This is crazy, you can't do something like this in the restroom." The prosecutrix managed to get up from the floor, and she left the restroom with the defendant holding on to her arm. The defendant did not expose his private parts in the restroom. As they left the restroom the prosecutrix asked the defendant to leave without her, that she would take a bus home. The defendant "just laughed," and she ran toward the service station attendant "screaming" and "begging" him to help her get away from the defendant. The defendant hit her and drug her across the pavement to his car. He forced her into the back seat of the car, and then got in the seat with her and put both of his arms around her neck, holding her in an "arm lock."

The car was driven away from the Orbit Service Station in the direction of Bessemer by Walter Reeves, and they stopped at the Reeves' home, which is located off the highway on the right side travelling towards Bessemer. Walter and Pat got out of the car. The defendant was still holding the prosecutrix in an arm lock. The prosecutrix asked if she could stay with the Reeves, or walk home, or make a telephone call. These requests were refused. She was "put" in the front seat of the car, with the defendant holding her by one arm and Walter Reeves by the other. The defendant got in the driver's seat while Walter stood by the door on the side where the prosecutrix was sitting. The defendant drove away from the Reeves' home with just he and the prosecutrix in the car. He turned right onto the "Bessemer Super Highway" and proceeded toward Bessemer. The prosecutrix "begged" him to take her home but he "only laughed," and said that he was going to take her to a motel whether she wanted to go or not. After several minutes they passed a police car travelling in the same direction, and as they passed the police the prosecutrix put her head and arms out of the front window of the car in order to "attract attention." The defendant stated that she was getting to be too much trouble. After passing the police car he made a left turn (or U-turn) and proceeded back toward Birmingham on the same highway. While making the turn, or immediately thereafter, the defendant told the prosecutrix, "Aw to hell with the motel, to hell with everything, I'm just going to kill you right now." The defendant travelled only a short distance after making the turn before he pulled off to the right of the highway and stopped the car. Before stopping the car, the defendant grabbed the prosecutrix by her throat with one hand and held her head down in his lap. She kicked the right front door open before he stopped the car. When the car stopped he let go of her throat and held her around the waist, and then let go of her completely when a police officer walked up to the car. The prosecutrix got out of the car and told the police officer, "he's trying to rape me." The prosecutrix testified that she had a swollen lip, two black eyes, cuts and abrasions on her forehead, a stiff neck, and a scratch on her leg. On cross-examination she testified that the defendant did not try to rape her while they were riding in the car after leaving the Reeves' home.

Charles W. Gamble, a witness for the State, testified that he was the attendant at the Orbit Service Station during the night of the alleged assault. Gamble was waiting on a customer when the defendant's car pulled into the station about 2:00 or 3:00 A.M. The prosecutrix got out of the car and went towards the restrooms. Her clothes were torn and her hair was hanging in her face. A few minutes later another girl got out of the car and went to the restrooms, then returned to the car. Then she, Walter Reeves and the defendant left the car and walked behind the station where the restrooms are located. Walter Reeves came back to the front of the station and obtained the keys to both restrooms and went behind the station again. Then Walter and Pat (the second girl) walked out and got in the defendant's car. About five or ten minutes later Gamble saw the appellant "dragging" the prosecutrix towards the car. She was "screaming" and "hollering" and "trying to get loose." The defendant pushed her into the car, got in the back seat next to her and locked his arm around her neck, and then Walter drove away towards Bessemer. Gamble testified that the Orbit Station is within the city limits of Birmingham.

W. L. Smith, testifying for the State, stated that he was working as a patrolman for the City of Lipscomb on the night of the alleged assault. Smith and another officer, a Mr. Kines, were travelling towards Bessemer on the Bessemer Super Highway at approximately 3:25 A.M. when the defendant and prosecutrix passed them, going in the same direction. The prosecutrix had her head and one arm out of the window of the car. The defendant made a "U-turn" after passing Smith and proceeded towards Birmingham. Smith also made a "U-turn", and defendant's car was approximately a block ahead of him at one time after making the turn. When the defendant's car was about thirty or forty feet from Ray Skewe's Service Station the front right door came open and the defendant drove his car onto the cement apron in front of the station and

stopped. Smith stopped behind the defendant's car, and as he walked up to the car he saw the defendant holding the prosecutrix by the waist. Upon seeing the officer he released her and she ran to the officer and said that the defendant was trying to rape her. According to Smith, the prosecutrix had a bursted lip, a knot over her eye, and skinned places on her face. The crotch of her shorts were torn out. The officer did not smell any beer or intoxicating beverage on her. The defendant was in an intoxicated condition. Smith testified that Ray Skewe's Service Station and the point where he first observed defendant's car are both within the "Bessemer Cutoff."

Dr. H. C. Springer, whose qualifications as a medical expert were admitted by the defendant, testified that he examined the prosecutrix between 11:00 and 12:00 A.M. on the day of the alleged assault and found contusions of the lips, both eyes to be black, abrasions on the nose and forehead, a muscle spasm of the neck. The doctor further testified that he found no evidence of the prosecutrix having been molested or her private parts injured in any way from "attempted molestation" and found no bruises or marks about the thighs and lower parts of her body.

The defendant testified that he is 27 years of age, that he is married and has 3 children, and that he did not know the prosecutrix before the night of the alleged assault. The testimony of the defendant, Pat Reeves, and Walter Reeves tends to establish that the prosecutrix drank several beers at Watson's and that both she and the defendant were intoxicated when they left Watson's about midnight, and were still intoxicated when they left the Graymont Cafe about 2:30 A.M. The defendant's evidence tends to establish also that after leaving the Graymont Cafe, the defendant and prosecutrix "mutually" kissed each other. Shortly after leaving the cafe, however, the prosecutrix began crying and said she wanted to go to a restroom. Walter Reeves, who was driving the car, stopped at the Orbit Service Station at her request, and when she

got out of the car to go to the restroom her shorts were "split out" and she was intoxicated. The defendant denied that he hit her or tore her shorts. Pat Reeves went to the restroom to check on the prosecutrix because she was gone for a "long period of time." When Pat discovered that she was not in the ladies' restroom, she returned to the car, and then Pat, Walter and the defendant went to the restrooms to check again and discovered that the prosecutrix had locked herself in the men's restroom. The defendant opened the restroom with a key and asked the prosecutrix to return to the car. When she refused to do so he entered the restroom, picked her up, put her down outside, and then put her in the car. He testified that he did not hit her or try to have sexual intercourse with her in the restroom and that he did not hold her in an "arm lock" in the car. Upon arriving at the Reeves' home she voluntarily got in the front seat of the car. Defendant testified that when he drove onto the Bessemer Super Highway after leaving the Reeves' home he did not realize that he was not going toward Birmingham until he saw a police car and noticed that the officers in the car were not Birmingham officers; that he then turned around and proceeded toward Birmingham, and as he made the turn the prosecutrix opened the right front door and tried to jump out of the car. He grabbed her to prevent her from jumping, and stopped the car when he found a place to do so off the highway. The defendant testified that he did not at any time hit the prosecutrix or choke her, and that he did not see any bruises on her face.

The defendant contends that the court below committed reversible error in overruling his motion to exclude the State's evidence as to Count Two of the indictment, and in failing to give the affirmative charge for defendant as requested. Error in both rulings is predicated on the argument made in the court below, and here, that the State's evidence failed to establish an assault with intent to ravish within the territorial jurisdiction of the Bessemer Division of the Jefferson County Circuit Court. It is suggested that the evidence might support a charge of such assault within the territorial jurisdiction of the Birmingham Division of that court, but not in the Bessemer Division.

It was stipulated and agreed by both parties that the Orbit Service Station, where the defendant allegedly attacked the prosecutrix in the restroom, is not within the territorial jurisdiction of the Bessemer Division of the Jefferson County Circuit Court, or within what is commonly called the "Bessemer Cutoff." The jury was instructed, in effect, that they could not find defendant guilty of an offense committed at the Orbit Service Station; that they could not find him guilty of the offense of assault with intent to ravish unless they believed from the evidence beyond a reasonable doubt that such assault "was committed by the defendant within the Bessemer Cutoff."

The State's evidence establishes that defendant physically assaulted the prosecutrix just prior to and at the time he stopped his car at Ray Skewe's Service Station, which was shown to be within the Bessemer Cutoff. Defendant insists that the evidence pertaining to this attack is insufficient to support a charge of assault with intent to ravish because the prosecutrix testified (1) that the defendant did not try to rape her in the car after leaving the Reeves' home, and (2) that after defendant made the U-turn upon passing the police car he said to her, "Aw, to hell with the motel, to hell with everything, I'm going to kill you right now."

■■ The evidence presents a jury question as to whether defendant assaulted the prosecutrix within the Bessemer Cutoff with intent forcibly to ravish her. Testimony pertaining to the alleged events occurring within the jurisdiction of the Birmingham Division of the court was admissible as part of the res gestae, to show intent. The court committed no error in overruling the defendant's motion to exclude the State's evidence, or in failing to give the affirmative charge for defendant.

A character witness for defendant was asked on cross-examination: "Didn't ask if [defendant] catted around with women?" Defendant's objection to this question was overruled. The question was not answered. The question was not so highly prejudicial to defendant as to warrant a reversal of this cause.

Appellant contends that the court erred in refusing to admit a photograph—defendant's Exhibit No. 1—over the State's objection. Error cannot be predicated on the court's ruling as the photograph was shown to have been taken after the alleged offense, and was irrelevant and immaterial. Assuming that the court's ruling was error, it was error without injury since the same photograph was subsequently adopted and introduced in evidence by the State, the introduction being consented to by appellant.

The court properly sustained objections by the State to appellant's Exhibits No. 5 and 6. These photographs were not relevant to any issue in the case, and would not tend to establish general bad reputation.

Appellant's requested Charge No. 11 relates to circumstantial evidence, and is the same as Charge No. 33 in Way v. State, 155 Ala. 52, 46 So. 273. In *Way* the court held it was error to refuse such charge. However, in *Way* the evidence was wholly circumstantial. It is proper to refuse a requested charge relating to circumstantial evidence when the evidence is not wholly circumstantial, as in the instant case. See Haygood v. State, 252 Ala. 3, 38 So.2d 593; Golden v. State, 39 Ala.App. 361, 103 So.2d 52, cert. den. 267 Ala. 456, 103 So.2d 62.

Defendant's counsel interposed the following objection to a portion of the solicitor's argument to the jury: "We object to that line of argument, because the law is that you can't bring in general reputation in this type of case." The court overruled the objection and counsel reserved an exception to such ruling. The record does not disclose the actual words of the solicitor's statement. A "note" by the court reporter states that the "objection related to a statement made by [the solicitor] during his oral argument to the *effect* that * * *" etc. If the argument was beyond the bounds of legal propriety the record does not sufficiently disclose what was said in its context for us to say that the argument was improper. Mincy v. State, 262 Ala. 193, 78 So.2d 262; Ferguson v. State, 36 Ala.App. 358, 56 So.2d 118.

The solicitor's remark to the jury, "Send word out to everyone that a married man, such as Mr. Hamilton in this case, are not to take single girls out here and commit acts such as the evidence in this case shows that he committed," did not transcend the bounds of legitimate argument.

Defendant applied for probation at the time of judgment and sentence, and the application was pending when he filed a motion for a new trial more than 30 days after judgment. The court granted the State's motion to strike the motion for a new trial on the ground that it was not filed within 30 days, as required by Sec. 119, Tit. 13, Code 1940. The refusal to consider a motion for a new trial filed more than 30 days after rendition of judgment is proper, although the defendant applied for probation prior to the expiration of the 30 day period and such application is pending when the motion is filed. The power of a circuit court to alter or set aside judgment expires after a lapse of 30 days from the date of rendition of judgment, unless a proceeding for that purpose was begun during the 30 day period. Probation does not operate to alter or set aside judgment. Judgment and sentence remain in full force. Execution of judgment is merely suspended.

This cause is due to be and the same is hereby

Affirmed.

CATES, J., dissents.